EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

and

Mary Boyle for the Estate of Michael
Boyle, Intervenor,

v.

R.J. GALLAGHER COMPANY,
Defendant.

Civil Action No. H–94–2247.

United States District Court,
S.D. Texas,
Houston Division.

April 4, 1997.

Kathy D. Boutchee, Houston, TX, for E.E.O.C.

J. Stuart Garbutt, Chicago, IL, for Mary Boyle.

Hal G. Wolff, Houston, TX, for R.J. Gallagher Co.

Opinion on Second Interlocutory Judgment

HUGHES, District Judge.

1. *Introduction.*

Michael Boyle was demoted from president to vice-president of the R.J. Gallagher Company at roughly the same time he completed his first chemotherapy treatment. Boyle and the Equal Employment Opportunity Commission sued claiming that the demotion was the result of the company's hostility to the disabled. Along with the statutory claims, Boyle sued the company to enforce his employment contract, but when the company countersued for Boyle's breach of the non-competition part of that contract, the commission and Boyle added a claim that it was suing him in retaliation for his statutory claims.

The company violated no statute, but the court held it did breach the contract by not giving Boyle notice of non-renewal in time. The company cured that breach after an interlocutory order of liability. The company has no additional liability, and the interlocutory decision on liability for breach of contract will be rescinded.

2. *Claims.*

Boyle has brought these claims against the Gallagher Company:

- The company demoted him because of his age.
- It demoted him because he was disabled.
- It denied him medical leave.
- It retaliated against him for asserting his rights.

The Gallagher Company sued Boyle for breach of his employment contract. It also sued the other company that Boyle was surreptitiously helping.

3. *The Story.*

When Boyle was fifty-nine years old, he had worked for the Gallagher Company for twenty years. At that time, he was president and a member of the board of directors. He had risen to that position through being a salesman, sales manager, vice-president of sales, and executive vice-president He had

been president for about one year when he developed leukemia.

Boyle and the company had agreed in writing that the company would continue to employ him for successive one-year periods unless either party gave written notice of termination at least sixty days before the contract's anniversary date. The contract was revised in February of 1991 to cover a three-year term. The contract did not specify a position at the company, but it was signed while Boyle was executive vice-president.

The court issued an interlocutory judgment for Boyle on the breach of contract claim, holding that the agreement automatically renewed itself and would remain in effect at least through January 31, 1995, since neither side gave notice of termination. The company promptly complied, paying Boyle a vice-president's salary until he died.

In December of 1993, when Boyle's cancer was diagnosed, he was hospitalized for chemotherapy for thirty days beginning on December 18, 1993. When Boyle was released from the hospital on January 18, 1994, his cancer was in remission. His doctor said he could return to work with no limitations. The only complication was that Boyle would require six monthly chemotherapy treatments, with each treatment lasting three to five days.

Boyle returned to work on January 26, 1994, and met with Robert Gallagher, Jr. Gallagher demoted Boyle to executive vice-president and decreased his salary effective February 1. Boyle left and never returned to work.

Gallagher is the chief executive officer of the Gallagher Company. Gallagher was president of the company for seventeen years before he promoted Boyle to president. He reinstated himself after demoting Boyle. Gallagher also is the constructive owner of the company since he is the general partner of a family limited partnership that holds the majority of the company's stock.

In preparing to defend the employment discrimination claims, the company discovered that Boyle had violated the provisions in his contract requiring him to devote his full time and best efforts to the company. Boyle was serving secretly as a director of Schulze & Burch Biscuit Company. The company also discovered that Boyle had billed a trip to a Schulze & Burch directors' meeting as a Gallagher business expense.

Michael Boyle died on January 13, 1995, and Mary Boyle, his executrix, replaced him as a party.

## 4. *Medical Leave.*

Employees are entitled to up to twelve weeks of time off without compensation each year if they are unable to work due to serious health conditions. 29 U.S.C. § 2612 (1996). When Boyle asked for time off for chemotherapy, the company let him have all the time he wanted. In addition, it allowed him time off to see doctors to diagnose his illness. He was off from December 16, 1993, to January 25, 1994, for chemotherapy. Boyle never requested time off that the company denied.

Boyle contends that he was demoted to prevent him from asking for, and taking, medical leave in the future. The law is concerned with medical leave that has actually been requested and denied. 29 U.S.C. § 2615 (1997). While a demotion might lessen the burden on the employer of future requests, to have a claim requires that Boyle have asked for leave and been denied.

Boyle claims that his demotion was the practical equivalent of being fired. Firing a frequent medical leave claimant to prevent his asking for additional leave might implicate the interests served by the law if the employer was making an example out of the sick worker. Assuming that Boyle's demotion equals a firing, no fact has been suggested that connects Gallagher's decision (man or company) to Boyle's medical leave.

Parenthetically, the parties had plenty of time for discovery before Boyle died. Boyle simply says that he was fired after he was diagnosed; therefore, he was fired because of his diagnosis. *Post hoc ergo propter hoc* is still a fallacy.

### 5. *Age.*

■ Boyle claims that the Gallagher Company mistreated him because of his age. To succeed on a claim for age discrimination a worker must demonstrate that:

- He belonged to a protected class;
- He qualified for the job;
- The company acted adversely to him; and
- The company preferred a person substantially younger. *Guthrie v. Tifco Industries,* 941 F.2d 374, 376 (5th Cir. 1991), *cert. denied,* 503 U.S. 908, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992).

■ Boyle was fifty-nine, is assumed to have been qualified, was demoted, and was replaced by Gallagher, who was fifty-seven. In addition, two vice-presidents, aged forty-seven and fifty-one, who assumed some of Boyle's duties as president were also in the protected class. If Boyle had been fired because of his age, he would not have been replaced by people essentially the same age. Boyle loses on his age claim because the ages of fifty-nine and fifty-seven are sociologically and jurisprudentially indistinguishable.

The company produced objective evidence of operating problems during Boyle's presidency. The assumption that he was qualified for the job has actually been rebutted. Boyle says that the company's difficulties were not a result of his administration but were the consequence of changes in the market. The president of a company is ultimately responsible for the company's performance, regardless of external events.

Presidents of companies tend to be over the age of forty. The age discrimination statute was not intended to insulate principal officer-directors from individual responsibility for the company's performance. The statute does not affect the owners' power to change corporate management.

### 6. *Fired or Quit: The Defense of Constructive Discharge.*

When a worker walks off the job for his own reasons, the company has not fired him, and he could not succeed with a claim of illegal discrimination. Sometimes the treatment of the worker is abusive to the extent that no reasonable person would be expected to stay on the job and sue rather than leave. The imposition of unreasonably oppressive conditions is the functional equivalent of firing the worker. This equivalence with firing is called constructive discharge, with "constructive" being a legalism for "pretend." A claim of constructive discharge is not an independent claim for recovery; it is a counter-defense to the employers defense that the worker quit. The operative fact is the company's treatment of the worker that offended a law before the end of the worker's tenure, however the termination was accomplished.

■ When he returned to work after his chemotherapy, Boyle was offered a vice presidency. He refused it. He claims that being removed from the presidency after one year and being returned to the job of vice-president was intolerably oppressive. Boyle says that this amounted to being fired. No occasion arises to recharacterize the facts from a quitting into a firing. Boyle was sick and unhappy, but he was not oppressed by his employer. Boyle quit.

### 7. *Owner.*

Gallagher owned the company. He was president for seventeen years before Boyle became president He concluded that it was in the company's best interest to demote Boyle and reinstate himself as president. The owner can assume a position himself without offending the statutes on discrimination because his ability to displace workers with his own efforts is physically restricted, unlike his ability to replace disfavored social categories of workers with favored ones.

### 8. *Disabilities.*

■ Boyle asserts that Gallagher mistreated him because he was handicapped. The law says that it is illegal to treat an employee who is disabled with hostile differentiation. A person is disabled if he has an impairment that substantially limits a major life activity, he has a record of impairment, or he is regarded as having an impairment. The person must be disabled and capable of doing the job with only a reasonable accom-

modation. Americans with Disabilities Act. 42 U.S.C. §§ 12102(2), 12131 (1996).

Boyle had no disability-actual, historic, or perceived. He was not disabled; he was critically ill. This law covers conditions, temporary or permanent, affecting a specific functional capacity that are essentially incurable with current medical science. Many diseases, like diabetes and epilepsy, are conditions that do not apparently involve external bacteria or viruses and that require life-long maintenance. Although the cause of cancer is not known, it may result from genetic misprogramming or from an external influence on sound programming; it is not a disability. The effects of cancer can leave a person disabled. It may cause a leg to be amputated or lung capacity to be restricted. An ordinary illness does not disable the patient, but the course of the illness may cause a disability.

The analysis under the act poses these questions:

- Can you walk, see, hear, speak, breathe, lift, learn, etc? (objective function)
- Despite the combination of these inabilities, are you substantially unrestricted in your ability to work and take care of yourself? (abstract function)
- Is the objective function essential to the job? (qualification)
- Is more than a reasonable accommodation needed for you to be able to be at work to do the job? (accommodation)
- Is there a plausible explanation for the job action? (contradiction of inference of irrational reaction—"reactive distaste")

An answer of "yes" to any one of these questions defeats a claim. For Boyle, no matter which questions are assumed to be "no," the record shows a "yes" answer to another one.

The only limitation that Boyle identified was his need to take time off for therapy. That need is not a disability under this act; it is a right under another act.

As usual in these cases, when the record shows no actual disability the worker claims that the employer perceived him as disabled. Assuming that Gallagher perceived Boyle as ill, that is not a perception of disability. The "or perceived" language is in the law to protect people who have some obvious specific handicap that employers might generalize into a disability. Boyle did not have a condition—a defect—that Gallagher, based on erroneous social stereotypes, could generalize into an inability to function on the job.

The Texas law's definition of disability is substantially the same as the federal law; therefore, Boyle is not disabled under Texas law either. *See* Tex. Lab.Code Ann. § 21.002(6) (1996).

### 9. *Breach of Contract: Boyle's Claim.*

■ Boyle sued Gallagher for breaching the employment contract. Gallagher demoted Boyle. Demoting Boyle did not violate the contract because it was for a term and not a position. It had been signed when Boyle was vice-president. Because the reassignment was not horribly demeaning (constituting constructive discharge), the contract was not breached.

■ The employment agreement guaranteed Boyle a job with Gallagher Company, but it did not specify what position. A corporation can bind itself to pay a person, but it cannot bind itself in an employment contract not to elect different officers. Tex.Bus.Corp. Act Art. 2.43 § 3a (1980).

■ Under Texas law, a director of a corporation cannot deny knowledge of the company's actions and policies; this means that Boyle cannot be both the author of an illegality and its victim.

### 10. *Breach of Contract: Gallagher's Claims.*

#### A. *Schulze & Burch.*

Gallagher says that Boyle's membership on the board of directors of Schulze & Burch violated his contract with Gallagher and violated his duty of loyalty to the company under corporate law. That issue will be resolved in a later proceeding.

#### B. *Employment Contract.*

In defense of Boyle's contract claim, Gallagher says that when Boyle abandoned his job

he breached the contract, freeing Gallagher from its obligation. In the course of reaching this decision on the statutory claims, the court has been compelled to reconsider its decision that Gallagher owed Boyle notice.

The company did not owe Boyle notice before reassigning him from president to vice-president. The company could not end the contract without notice, but it allowed the company to reassign Boyle from president to vice-president without notice. Because the vice presidency was not oppressive, Boyle was merely reassigned, not fired-constructively or otherwise.

The court apologizes to the company for forcing it, in effect, to pay Boyle's salary during the pendency of the case. The consequences of the revision of the decision on liability will be explored with Gallagher's other contract claim.

### 11. *Retaliation.*

█ Boyle claims that Gallagher Company brought its breach of contract suit against him and his other employer to retaliate for his claim to the Equal Employment Opportunity Commission.

Gallagher Company discovered that Boyle may have breached his employment contract with them by serving on the board of Schulze & Burch. The suit is based on objective facts, like board membership and a written contract; it articulates well-established, old-fashioned legal theories. Nothing about the action suggests abusive use of the courts.

As it appears that the company is likely to be correct in its claims on contractual and fiduciary duties against the worker, this question is raised: Is it possible for a lawsuit that is factual and legally well-founded to be retaliatory? A similar question is: Can a worker claim that the degree of his prosecution for admitted wrongs was motivated by his exercise of his statutory rights? If he had left quietly, would the company still have sued him for an admitted theft of company property?

This nation's progress toward equal rights does not imply the contraction of the existing equal rights of others to their property; Justice Frankfurter's observation that the histo-

ry of the safeguards of liberty involved not very nice people does not apply to the history of individual rights to be free from governmental-sanctioned restriction based on race, on whose historic achievements the age and disability advocates have merely built. *U.S. v. Rabinowitz,* 339 U.S. 56, 69, 70 S.Ct. 430, 436, 94 L.Ed. 653 (1950). George Rutherglen, *From Race to Age: The Expanding Scope of Employment Discrimination Law,* 24 J. Legal Stud. 491, 505, 507–08 (1995). The right to be free from discrimination based on age or disability does not cancel the individual's responsibility for all of his acts at law.

Obviously, the commission joined in the retaliation claim against Gallagher without investigating the company's claim that Boyle was violating his contract. A cursory examination of Boyle's other employment would have revealed facts that would have alerted the commission that the company was justified in the suit.

An employer is not retaliating if it brings its own plausible case against a worker who asserts a civil rights claim.

### 12. *Conclusion.*

Gallagher Company did not discriminate against Boyle. His demotion was a consequence of the company's performance while he was president. If he was fired, he was replaced by people his own age. He was not disabled. He was not denied time off for medical care. Boyle's claims all fail.

Since the EEOC's claims are derived from Boyle's claims, they also must fail.

Gallagher's action against Boyle was not retaliatory. The court's interlocutory decision on liability of Gallagher to Boyle is reversed.

A conference will be set to discuss the remaining claims about Boyle's breach of contract and repayment of excess compensation.