**Marnie RUSS, Plaintiff,**

v.

**VAN SCOYOC ASSOCIATES, INC., et al., Defendants.**

**No. CA 98–3151 (RCL).**

United States District Court, District of Columbia.

Nov. 16, 2000.

Diana Johnson Veilluex, Susan Elizabeth Shaw, Shaw, Bransford, Veilleux, & Roth, Washington, DC, for plaintiff.

Allen Scott Rugg, Powell, Goldstein, Frazer & Murphy, Washington, DC, Gary Samuel Marx, Marx & Krame, Washington, DC, Alan David Strasser, Kutak Rock, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

LAMBERTH, District Judge.

Plaintiff Marnie Russ has filed suit against defendants Van Scoyoc Associates, Inc. and the President of Van Scoyoc Associates, H. Stewart Van Scoyoc, charging that she was sexually harassed, discriminated against on the basis of her gender, constructively discharged and retaliated against in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and the D.C. Human Rights Act (DCHRA), D.C.Code § 1–2501 *et seq.* Defendants have moved for summary judgment on all counts. For the reasons set forth below, the Court grants in part and denies in part the defendants' motion.

### I. Background

Marnie Russ began working at Van Scoyoc Associates as a receptionist in October of 1996. By August of 1997, she had been promoted to the position of staff assistant. That same month, she went to the

firm's Vice President for Administration, Janet Buckley, and told her that she was having a hard time living on her salary, and that she was considering taking a part-time job to supplement her income. Ms. Buckley offered to give Ms. Russ a mid-term raise at that point, making Ms. Russ's salary $32,000.

In October of 1997, Ms. Russ was told that another firm had a similar position open which paid $35,000. Ms. Russ told Ms. Buckley about the other firm's offer and was told that if she stayed with Van Scoyoc Associates, she would "be where she wanted to be" after her year-end salary increase. Ms. Russ believed this to mean that she would receive a raise, making her salary $35,000, after her year-end review. She also was informed that she would receive a 10% bonus.

On December 8, 1997, Jan Schoonmaker, a Vice President at Van Scoyoc Associates, asked Ms. Russ to help him prepare for a meeting for which he was running late. As she was helping him, he noticed that some papers were missing. He became irate and, while brandishing a stack of papers at her, made a number of derogatory remarks about her abilities. These facts form the basis for the plaintiff's first count. *See* Complaint ¶ 134–35.

The next day, December 9, 1997, Van Scoyoc Associates had its annual Holiday party at the Old Ebbitt Grill. During the party, several people became very intoxicated, including a Vice President, Paul Grimm. After the party ended at approximately 3 p.m., Mr. Stewart Van Scoyoc told the employees that no one had to return to work that day. A number of people, including Mr. Grimm and Ms. Russ, went to the Bottom Line, a bar, to continue socializing. While at the Bottom Line, Mr. Grimm sympathized with Ms. Russ's recent encounter with Mr. Schoonmaker and offered to have her work for him in the future. Then, as the day worn on, he began making a number of sexually explicit and offensive remarks to Ms. Russ, telling her that he admired her breasts,

that he wanted to have sex with her, that he wanted to perform oral sex upon her, and that "she could make more money working at Hooters than at Van Scoyoc Associates." This continued for some time until Ms. Russ left the bar.

Ms. Russ then reported the conduct of Mr. Grimm to her office manager, Ms. Haley. Ms. Haley then reported the event to Ms. Buckley, who reported the event to Mr. Van Scoyoc. On December 12, 1997, Ms. Russ spoke with Mr. Van Scoyoc about the incidents involving Mr. Schoonmaker and Mr. Grimm. Mr. Van Scoyoc told her to be tolerant of Mr. Schoonmaker because he has "nothing outside of his work". Plaintiff's Opposition, Ex. 3 Van Scoyoc Deposition at 46. He also told Ms. Russ that Mr. Grimm was having marital problems and that it would be better if his wife did not find out about the incident at the Bottom Line.

Later that day, Ms. Russ was told that her raise would only bring her salary to $32,000 and her bonus would be only 6%, not the $35,000 salary she believes she was promised, nor the 10% bonus.

The following Monday, December 15, Ms. Russ met again with Mr. Van Scoyoc and attempted to resign. Mr. Van Scoyoc refused to let her resign, instead giving her an extended vacation and flying her home to visit her family in Montana. He told her that they could discuss her situation in the New Year.

When Ms. Russ returned from vacation, she, Mr. Van Scoyoc, and Ms. Buckley scheduled a meeting for January 6, 1998. When Ms. Russ went to this meeting, she brought along an attorney, Claude Convisser, to negotiate the terms of her return to Van Scoyoc Associates. However, when Mr. Van Scoyoc saw that Ms. Russ brought counsel to the meeting, he became upset and abruptly ended the meeting. Ms. Buckley asked Ms. Russ to hand over her keys to the office and to leave the building.

Ms. Russ filed this action against Van Scoyoc Associates and Mr. Van Scoyoc personally on December 28, 1998. Mr. Van Scoyoc previously filed a motion to dismiss the claims with respect to him, which was granted for the claims arising under Title VII and a constructive discharge theory and denied for the claims under DCHRA. Thus, the only remaining claim against Mr. Van Scoyoc personally is Count IV, the constructive discharge claim. A motion to dismiss the constructive discharge claim filed by Van Scoyoc Associates was also denied. *See Russ v. Van Scoyoc Associates, Inc.*, 59 F.Supp.2d 20 (D.D.C.1999).

## II. Count I—Sex Discrimination Based on Mr. Schoonmaker's December 8 Conduct.

■ Ms. Russ alleges that Mr. Schoonmaker's conduct on December 8, 1997, when he yelled at her and brandished a stack of papers at her, constitutes sex discrimination in violation of Title VII. To prevail on a sex discrimination charge, a plaintiff must show that not only that she is a member of a protected class, and that similarly situated individuals who are not a member of a protected class were treated differently, but also that the plaintiff suffered some adverse employment action. *See, e.g., McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Brown v. Brody*, 199 F.3d 446, 452 (D.C.Cir.1999).

■ In the present case, the plaintiff has alleged that she was discriminated against by Mr. Schoonmaker because he did not yell at male employees the way he yelled at her, and other female employees at Van Scoyoc. *See* Complaint ¶ 135. The adverse employment action contemplated by the plaintiff, then, is that she was yelled at by Mr. Schoonmaker. While the D.C. Circuit has not reached this issue, it is clear that merely being yelled at by your supervisor does not rise to the level of an adverse employment action. *See e.g., Burlington Industries, Inc. v. Ellerth,*

524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) ("[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" and a "bruised ego" is not enough) (quoting *Flaherty v. Gas Research Institute*, 31 F.3d 451, 456 (7th Cir.1994)); *Brown*, 199 F.3d at 457 (a lateral transfer and a letter of admonishment, absent "some other materially adverse consequences affecting the terms, conditions, or privileges of employment" are not adverse employment actions for the purposes of Title VII) (citing *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir.1996) ("not everything that makes an employee unhappy is an actionable adverse action")).

Because Ms. Russ has not demonstrated that she suffered an adverse employment action from Mr. Schoonmaker, summary judgment is granted to defendants on Count I.

## III. Count II Sexual Harassment by Mr. Grimm on December 9

Ms. Russ alleges that when Mr. Grimm made a number of sexually explicit and offensive comments to her at the Bottom Line after the Van Scoyoc holiday party, he sexually harassed her such that it was "sufficiently severe or pervasive to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1985) (quoting *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir.1982)).

■ The defendant alleges that this one incident at the Bottom Line, while certainly offensive and unfortunate, is not severe enough to reach the level of actionable conduct under Title VII. *See* Defendants' Memorandum at 31–32. The Court agrees. While Mr. Grimm's conduct is clearly offensive, degrading, and should

have no place in a working environment, the Supreme Court has articulated a clear standard—"isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

The plaintiff argues that in some cases a single incident is sufficient to qualify as hostile workplace sexual harassment. *See* Plaintiff's Opposition at 18. Plaintiff cites two cases, *Smith v. Sheahan,* 189 F.3d 529 (11th Cir.1999), and *Lockard v. Pizza Hut,* 162 F.3d 1062 (10th Cir.1998), in support of this proposition. In *Sheahan* the 11th Circuit found that a single incident was sufficient to alter the terms of the workplace, when a woman was assaulted so severely that she required reconstructive surgery. 189 F.3d at 531. In *Lockard* the 10th Circuit found that an isolated incident where a restaurant patron grabbed the hair of a waitress, pulled her breast toward him and put his mouth on it was sufficient to constitute a Title VII violation. 162 F.3d at 1072. The distinction between these two cases and the present case is clear. In both *Lockard* and *Sheahan* the plaintiffs were physically assaulted. Without minimizing the disturbing nature of Mr. Grimm's comments to Ms. Russ, since there was no physical contact his conduct was simply not "extremely serious" in the same way.

Summary judgment in favor of the defendant on this count is therefore appropriate.

### IV. Count III Retaliation in Violation of Title VII

Ms. Russ alleges that she did not receive the raise or bonus that she claims she was promised in October of 1997 after these incidents happened and after she reported them to Ms. Haley. She claims that the reduction in her raise and bonus were in retaliation for reporting Mr. Grimm's conduct to Ms. Haley.

For a plaintiff to prove that she was retaliated against, she must prove that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) the adverse employment action was caused by the protected activity. *See Jones v. Washington Metropolitan Area Transit Authority,* 205 F.3d 428, 433 (D.C.Cir.2000).

The defendant has not argued that Ms. Russ did not engage in a protected activity. The Court finds that there are two distinct instances of protected activity she engaged in. First, she reported Mr. Grimm's conduct at the Bottom Line on December 9, 1997. Second, she arrived with an attorney to discuss her employment on January 6, 1998. Ms. Russ has met her burden with respect to this first element of her retaliation claim.

With respect to the second element, the defendant argues that because "plaintiff had little more than a subjective expectation about her possible raise and bonus" she did not suffer an adverse employment action. Defendants' Memorandum at 39. Were it the case that Ms. Russ had only a "subjective expectation about her possible raise and bonus" the defendant's argument would succeed. However, the plaintiff has produced enough evidence that there is a "genuine issue of material fact" as to whether she was promised the increased salary and bonus. *Anderson v. Liberty Lobby,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In October of 1997, Ms. Russ was approached by her roommate about an opportunity at her roommate's employer which paid $35,000 a year. *See* Plaintiff's Opposition, Ex. 2 Russ Deposition at 119. Ms. Russ spoke with Carolyn Fuller and Janet Buckley about this other job, and about her dissatisfaction with her current salary. *See id.* Ms. Fuller told Ms. Russ that by the end of the year, she "would be where she wanted to be." *See id.* Since the alternative job she was considering paid $35,000 a year, and this was made explicit to Ms. Fuller, she believed that

Ms. Fuller had promised to raise her salary to $35,000 a year. *See id.* Ms. Russ also testified that Ms. Fuller told her that she would receive a ten percent bonus. *See id.* at 122. Further, Ms. Russ has testified that she was told she would be promoted to legislative assistant at the same time she received the bonus and raise. *See id.* at 116. To rebut this evidence, the defendant has only proffered the testimony of Ms. Fuller, who doesn't recall a meeting, but acknowledges that she had a number of conversations about Ms. Russ's frequent requests for a higher salary. *See* Defendant's Memorandum Ex. 3, Fuller Deposition at 15. There is enough evidence on this element of the plaintiff's retaliation claim "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. The plaintiff has met her burden with respect to this element of her claim.

■ The defendant further argues that there is no evidence of a causal link between the protected activity and the adverse employment action. The defendant claims that "[i]t is uncontradicted that the decision regarding Ms. Russ' raise and bonus was made a week before the December 8th and 9th events." Defendants' Memorandum at 7. This is simply false. The plaintiff has produced evidence that Mr. Van Scoyoc acknowledged that the decision to finalize Ms. Russ's salary decision was made after the incident at the Christmas party. *See* Plaintiff's Opposition, Ex. 3, Van Scoyoc Deposition, at 34.[1] Under the minimal evidentiary standards for the plaintiff to survive summary judgment, this evidence is sufficient to show that there is a genuine issue of fact as to when the decision about Ms. Russ's salary was made. Where there is a small gap in

the amount of time between the protected conduct and the adverse employment action and the employer had knowledge of the protected action, that is sufficient to establish the plaintiff's case if unrebutted. *See, e.g., Carney v. American University,* 151 F.3d 1090, 1094 (D.C.Cir.1998); *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir. 1985).

■ Similarly, plaintiff's retaliation claim with respect to the January 6, 1998 meeting is strong enough to overcome summary judgment. There is sufficient evidence for a jury to find that Mr. Van Scoyoc did not accept her resignation in December, and that she was then terminated at the January meeting. Termination is unquestionably an adverse employment action. Further, the adverse action happened as soon as Mr. Van Scoyoc learned that Ms. Russ had brought counsel with her to the meeting. *See* Plaintiff's Opposition Ex. 5 Convisser Deposition at 27–28, Ex. 3 Russ Deposition at 151–52. The motion for summary judgment on this count is denied.

## V. Count V—Retaliation under the DCHRA

The defendants argue that several of Ms. Russ's retaliation claims under the DCHRA are time-barred by the DCHRA's one year statute of limitations. *See* Defendants' Memorandum at 37. Since this suit was filed on December 28, 1998, only the meeting on January 6, 1998 was within the statute of limitations.

■ The plaintiff argues that the other events are timely filed under the continuing violation doctrine. *See* Plaintiff's Opposition at 36–37. The D.C. Circuit has held that "to establish a continuing violation, a plaintiff must show 'a series of

---

1. A: Janet [Buckley] felt that 32 was adequate. And I reviewed where she stood as opposed to everybody else ... and felt that 32 was the more appropriate figure.
 Q: Do you think this discussion you had with Ms. Buckley occurred before the Christmas party?

 A: No. It occurred after.
 Plaintiff's Opposition, Ex. 3, Van Scoyoc deposition at 34.

related acts, one or more of which falls within the limitations period,' or the maintenance of a discriminatory system both before and during the [statutory] period." *Anderson v. Zubieta,* 180 F.3d 329, 336 (D.C.Cir.1999) (quoting *McKenzie v. Sawyer,* 684 F.2d 62, 72 (D.C.Cir.1982)). In this case, plaintiff is alleging that there were two distinct retaliations, one in December when Ms. Russ was retaliated against for reporting Mr. Grimm's conduct, and the other when she was retaliated against for bringing her attorney with her to the January meeting. These are not "a series of related acts" nor do they stem from "the maintenance of a discriminatory system." They are merely two similar events, one of which happened before the statute of limitations period, the other happened within that period.

Since the legal standard under the DCHRA is the same as the standard under Title VII, see *Howard University v. Green,* 652 A.2d 41, 45 (D.C.1994), the defendants' motion for summary judgment on the retaliation claim under the DCHRA is denied for the reasons set forth above. *See supra* Part IV.

The events in December 1997 are insufficiently related to the events in January 1998 to qualify as a continuing violation. Summary judgment on all claims under the DCHRA which happened before December 28, 1997 is granted, and summary judgment on the retaliation claim arising under the DCHRA for the January 6, 1998 meeting is denied.

## VI Count IV Constructive Discharge

Count IV of the complaint alleges that Ms. Russ was constructively discharged by Van Scoyoc Associates. The defendant alleges that constructive discharge is not an independent cause of action in the District of Columbia. *See* Defendant's Memorandum at 35–36. The Court agrees.

In the context of employment discrimination cases, a plaintiff makes what courts have called a "constructive discharge claim" when she alleges that she was dis-

criminated against and she was forced to quit as a result of the discrimination and aggravating circumstances. However, this is a part of the plaintiff's discrimination case, and not an independent theory, of liability. Establishing that the employee was constructively discharged is one way of establishing an element of a discrimination claim, that the plaintiff suffered an adverse employment action. Terminologically, courts may adopt the phrase "constructive discharge claim" to refer to a subset of employment discrimination claims where the adverse employment action was a constructive discharge, but this does not establish that there is a cause of action for constructive discharge independent of an employment discrimination action. For an example of this kind of use of the term see *Bishopp v. District of Columbia,* 788 F.2d 781, 782 (D.C.Cir.1986), "We reverse the district court's judgment on the promotion claim, vacate the judgment as to the retaliation and constructive discharge claims, and remand all the claims for further consideration." Further, this statement of the law comports with the practice in this Circuit. *See e.g., Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1558 (D.C.Cir.1997) (plaintiff could not maintain that he was constructively discharged absent a showing of discrimination in violation of Title VII); *Dashnaw v. Pena,* 12 F.3d 1112, 1115 (D.C.Cir.1994) (plaintiff can recover on a constructive discharge claim, "despite the fact that she failed to allege the claim in either her administrative notice or complaint") citing *Clark v. Marsh,* 665 F.2d 1168, 1172 n. 4 (D.C.Cir.1981). The Court finds it particularly compelling that although constructive discharge charges have been made in employment discrimination actions, contract actions, and cases dealing with labor disputes, the Court was unable to locate a single case where the D.C. Circuit considered an independent constructive discharge cause of action. *See id.* (constructive discharge was a component of an employment discrimination

action); *Beebe v. Washington Metropolitan Area Transit Authority*, 129 F.3d 1283, 1290 (D.C.Cir.1997) (constructive discharge was a component of a contract action); *W.C. McQuaide, Inc. v. NLRB*, 133 F.3d 47, 51 (D.C.Cir.1998) (constructive discharge was a component of a labor dispute); *Majewski v. B'Nai B'Rith International*, 721 F.2d 823, 823 (D.C.Cir.1983) (same).

This statement of the law is also consistent with other federal courts considering the issue. *See, e.g., EEOC v. R.J. Gallagher Co.*, 959 F.Supp. 405, 408 (S.D.Texas 1997) ("A claim of constructive discharge is not an independent claim for recovery; it is a counter-defense to the employer's defense that the worker quit.") *reversed on other grounds EEOC v. R.J. Gallagher Co.* 181 F.3d 645 (5th Cir.1999); *Vitug v. Multistate Tax Commission*, 88 F.3d 506, 517 (7th Cir.1996) (where a plaintiff cannot demonstrate discrimination, "his constructive discharge claim is doomed to failure"); *Knabe v. Boury Corp.*, 114 F.3d 407, 407 n. 1 (3rd Cir.1997) (a "constructive discharge claim ... is not a separate ground for relief, but rather would factor into the damages").

 The Court holds that there is no *independent* cause of action for constructive discharge. However, constructive discharge can still be a part of plaintiff's retaliation claim as an adverse employment action.

Therefore, since there is no independent cause of action for constructive discharge, Ms. Russ's constructive discharge claim is proper only as a component of her Title VII claims. Since Count IV is asserts an independent cause of action for constructive termination, summary judgment on Count IV is granted.

## VII Punitive Damages

 The defendants have argued that Ms. Russ's demand for punitive damages should be struck. *See* Defendants' Memorandum at 41–42. Punitive damages in Title VII cases are governed by 42 U.S.C. § 1981a, which holds that a plaintiff can recover punitive damages only if she can demonstrate that the defendant "engaged in a discriminatory practice ... with malice or with reckless indifference to the federally protected rights of an aggrieved individual." The Supreme Court has explained that this section of § 1981 a requires that the employer know that it is acting with malice or reckless indifference to the federally protected rights themselves, not just to the fact that it is engaging in discrimination or other bad conduct. *See Kolstad v. American Dental Assn.*, 527 U.S. 526, 535, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999).

The only remaining claims in this action deal with retaliation against Ms. Russ for engaging in protected activity. Since there has been no evidence presented that Mr. Van Scoyoc or any other person at Van Scoyoc Associates acted with malice or reckless indifference to Ms. Russ's federally protected rights, the plaintiff's demand for punitive damages is struck.

## VIII Conclusion

For the forgoing reasons, summary judgment is GRANTED to defendants with respect to Counts I, II, IV, and all parts of Count V based on events before December 28, 1997, and those counts and parts are hereby DISMISSED. Summary judgment is DENIED on Count III, and all parts of Count V based on events that happened after December 28, 1997. The Court also GRANTS defendants' motion to strike plaintiff's demand for punitive damages.

SO ORDERED.