**Nicole MCCAIN, Plaintiff,**

v.

**CCA OF TENNESSEE, INC., Defendant.**

**No. CIV.A.02–551 (EGS).**

United States District Court, District of Columbia.

March 27, 2003.

Alan Lescht, Esq., Washington, DC, for Plaintiff.

Dannie B. Fogleman, Esq., Kevin Michael Kraham, Esq., Ford & Harrison LLP, Washington, DC, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

SULLIVAN, District Judge.

## Introduction

Plaintiff Nicole McCain ("McCain") brings a diversity action against defendant CCA of Tennessee ("CCA") pursuant to the District of Columbia Human Rights Act, D.C.Code §§ 1–2510 *et seq.* ("DCHRA"). Plaintiff is employed as a corrections officer at the District of Columbia Correctional Treatment Facility ("CTF"), which is operated by CCA. Plaintiff alleges that she applied for, and was denied, a promotion to the position of Assistant Shift Commander because she refused a sexual advance by Chief of Security Larry Bynum ("Bynum"). (Compl., ¶ 8.) Plaintiff further alleges that there have been other complaints of sexual harassment against Bynum, that defendant knew or should have known about this harassment, and that defendant should be held liable for failing to take remedial measures with respect to the complaints of harassment. *Id.* at ¶¶ 10–11. Finally, plaintiff maintains that CCA retaliated against her for refusing Bynum's advances and for complying with physician's orders directing her to avoid "x-ray machines" at her place of employment. Pl.'s Opp'n at 9.

Plaintiff brings two counts against defendant: (1) sexual discrimination and harassment; (2) retaliation for "opposing unlawful sexual harassment." Compl. ¶ 19.

Defendant argues that neither count can withstand a motion for summary judgment. With respect to the harassment claim, defendant maintains that a single incident "is not severe or pervasive enough to constitute actionable sexual harassment." Furthermore, defendant submits that plaintiff was treated no differently than similarly situated males and that there is no evidence to indicate that the reason given plaintiff for rejecting her application was dubious or pretextual. In response to the retaliation allegations, defendant asserts that plaintiff cannot establish "that she met the minimum qualifications for the position." Def.'s Mot. at 2.

Upon consideration of defendant's motion, as well as the opposition and reply thereto and the relevant case law and statutory law governing the issues, it is by the Court hereby

**ORDERED** that defendant's motion for summary judgment is **GRANTED**.

## Events

CCA operates the CTF under contract with the District of Columbia Department of Corrections. Plaintiff has been employed by CCA since 1997. Assistant Warden of Operations Raymond Byrd ("Byrd")has been employed by the CTF since April 2001, as has Chief of Security, Larry Bynum ("Bynum"). Bynum reported to Byrd who, in turn, reported to Warden Carolyn Cross ("Warden" or "Cross"). As a Correctional Officer, plaintiff reported to all three individuals. Def.'s Mot. at 3.

In June 2001, CCA had two openings for the position of Assistant Shift Commander. Cross Dec., ¶ 3; Byrd Dec., ¶ 3. The re-

quirements for the position were set forth in the notice of vacancy which, pursuant to CCA policy, was issued from CCA headquarters in Nashville, Tennessee and posted thereafter at all CCA facilities. Byrd Dec., ¶ 3. The notice provided, *inter alia*, as follows:

> **Qualifications**: High school diploma, GED certification or equivalent, with three years experience in a criminal justice field which preferably includes one year in a supervisory capacity...

In or around June–July 2001, plaintiff applied for a promotion to Assistant Shift Commander. At approximately the same time, Bynum asked plaintiff whether she would visit him at the hotel in which he was staying. McCain Dep. at 14. After being rebuffed by plaintiff, Bynum raised the subject on a subsequent occasion, at which time he assured plaintiff that he would not tell anyone if she came to his hotel and plaintiff, in turn, replied that she would not do so under any circumstances. *Id.* at 14–15.

Warden Cross informed Byrd and Bynum that applicants who did not have experience as Senior Correctional Officers, or in equivalent supervisory positions, would not be considered for Assistant Shift Commander positions. Cross Dec., ¶ 4; Byrd Dec., ¶ 4; Bynum Dec., ¶ 4. Bynum screened the applications to see whether they met the qualifications set forth by the Warden. It was determined that Correctional Officer Wayne Bryan, Correction Officer Antoine Cobb, James Idleburg and plaintiff did not have the requisite supervisory experience. Byrd Dec., ¶¶ 6–7; Bynum Dec., ¶¶ 6–7. The applicants selected for interviews were La Var Matthews, Isiac Prosise, William Woods, and Lewis Bland. Each of these individuals had supervisory experience. Cross Dec., ¶ 7; Byrd Dec., ¶ 7. On July 18, 2001, Byrd sent each applicant who was not selected for an interview a memorandum setting forth the reasons for the applicant's rejection. Plaintiff, as well as Bryan, Cobb, and Idleburg, received memoranda stating that "[W]e are seeking applicants with prior supervisor experience at the Senior Correctional Level." Exhibits 8, 9, 10, and 11.

On July 16, 2001, plaintiff complained to Gloria Lloyd, the individual designated by the CTF to receive discrimination complaints. Plaintiff alleged that Bynum had sexually harassed her and that she had not been selected for an interview because she had declined his invitation. Byrd Dec., ¶ 10. Lloyd reported plaintiff's request to Warden Cross, who assigned CCA's investigator, Willie Meekins ("Meekins"), to investigate plaintiff's accusations. Cross Dec., ¶ 8. Meekins found that sexual harassment could not be established in light of the absence of corroborating witnesses and the denial by Bynum of plaintiff's allegations. Exhibit 17. Furthermore, Meekins found that plaintiff was not qualified for the interview, and consequently the position, in question. Plaintiff filed her lawsuit on August 2, 2001. On August 27, 2001, Warden Cross sent plaintiff a letter informing her of the results of Meekins' investigation. Exhibit 18.

Plaintiff contends that, since the filing of her lawsuit, the defendant has continued to harass her in numerous ways. Pl.'s Opp'n at 5. First, plaintiff alleges that, during the course of her pregnancy, and after having informed him of her need to work eight-hour days, Byrd responded that pregnancy was not a permanent disability and that he would not accommodate her physician's request. McCain Decl. ¶ 9. Second, plaintiff maintains that, while nobody had ever mentioned a problem with her hairstyle, jewelry or nails, Warden Figueroa directed her to change them subsequent to her filing of the present lawsuit. Finally, plaintiff claims that, after

having informed defendant of her physician's orders to avoid metal detectors and x-ray machines, defendant rejected plaintiff's request, insisted that she pass through x-ray machines, and suspended her without pay for fourteen days. Pl.'s Opp'n at 5. In response to plaintiff's allegations, defendant counters that plaintiff omits important facts and that the activities related to plaintiff's suspension were in no way connected to those attributed to Bynum. Defendant maintains that when plaintiff bypassed the metal detector, she was questioned by Assistant Shift Supervisor Brian Murray, an employee who was new to CTF and unaware of the allowances made for pregnant women. Though plaintiff was asked to provide a doctor's note, she bypassed the metal detector a second time without one. In accordance with the collective bargaining agreement between CCA and the National Professional Corrections Officers Union, a disciplinary hearing was held addressing plaintiff's "insubordination." Def.'s Reply at 11. The reason plaintiff's suspension was lengthy was that she had been suspended previously for cursing at a superior. *Id.*

**Standard of Review**

Summary judgment should be granted only if the moving party has shown that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Rhoads v. McFerran,* 517 F.2d 66, 67 (2d Cir.1975).

In employment discrimination cases, summary judgment must be approached with caution. *Rollerson v. Dart Group Corp.,* 1996 WL 365406 * 2 (D.D.C.1996) (citing *Ross v. Runyon,* 859 F.Supp. 15, 21–22 (D.D.C.1994)). If a reasonable factfinder could find discrimination, summary judgment is inappropriate. *Hayes v. Shalala,* 902 F.Supp. 259, 264 (D.D.C.1995). The non-moving party's opposition; however, "must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial." *Rollerson,* 1996 WL 365406 * 2.

**Discussion**

Under the DCHRA, it is unlawful for an employer to "discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment ..." on the basis of that individual's sex. D.C.Code § 1–2512(a)(1)(1992). As noted in *Harris v. Forklift Sys.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), [Title VII's prohibition against discrimination] "is not limited to economic or tangible discrimination. The phrase terms, conditions, or privileges of employment evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment."

The central question before this Court is why plaintiff was not promoted to the position of Assistant Shift Commander. It appears from her complaint that plaintiff is alleging sexual harassment, discrimination in denying her promotion because of her sex, and retaliation, adverse treatment and denial of an employment promotion because of her sex. For the purposes of the present motion, and pursuant to the standards governing motions for summary judgment, the Court must accept as true plaintiff's contentions that Bynum asked her to visit him in his hotel room and that she refused to comply with his request. What the Court must determine is wheth-

er, under any reading of the facts presented, the plaintiff's rejection of Bynum's advances can be viewed as related to her failure to achieve the promotion she sought to a supervisory position.

### A. Sexual Harassment and Discrimination Claim

■ The legal standards under the DCHRA are the same as those governing Title VII of the Human Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* *See Howard Univ. v. Green,* 652 A.2d 41, 45 (D.C.1994). In order to establish a hostile environment claim under the DCHRA, a plaintiff must demonstrate: (1) that she is a member of a protected class; (2) that she has been subjected to unwelcome harassment; (3) that the harassment was based on membership in the protected class; and (4) that the harassment is severe and pervasive enough to affect a term, condition, or privilege of employment. *Howard Univ. v. Best,* 484 A.2d 958, 978 (D.C. 1984). The District of Columbia Circuit Court has held that, to make a *prima facie* Title VII hostile environment claim, an employee must show: (1) that he/she was member of protected class; (2) that he/she was subjected to unwelcome sexual harassment; (3) that this harassment was based on sex; (4) that this sexual harassment had effect of unreasonably interfering with employee's work performance and creating an intimidating, hostile or offensive work environment; and (5) the existence of respondeat superior liability. *Davis v. Coastal Int'l Security, Inc.,* 275 F.3d 1119, 1123 (D.C.Cir.2002).

The Supreme Court has enunciated a number of criteria relevant to the determination of whether a work environment is hostile: (1) the frequency of the discriminatory conduct; (2) the conduct's severity; (3) whether the conduct is physically threatening or humiliating, or merely an offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *Forklift Sys.,* 510 U.S. at 23, 114 S.Ct. 367. Title VII is not violated by "conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive." *Id.* at 24, 114 S.Ct. 367 (Scalia, J., concurring).

Cases based on threats that are carried out are referred to as *quid pro quo* cases and distinguished from those involving sexual attentions or remarks sufficiently pervasive to create a hostile work environment. *Burlington Indus. Inc. v. Ellerth,* 524 U.S. 742, 751, 118 S.Ct. 2257, 141 L.Ed.2d 633(1998). If the plaintiff establishes a *quid pro quo* claim, the employer is subject to vicarious liability. *See Davis v. Sioux City,* 115 F.3d 1365, 1367 (8th Cir.1997)(cited in *Burlington,* 524 U.S. at 752, 118 S.Ct. 2257.) "When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the ... decision itself constitutes a change in the ... conditions of employment actionable under Title VII." *Burlington,* 524 U.S. at 753–54, 118 S.Ct. 2257.

With respect to *quid pro quo* sexual harassment claims, the United States Court of Appeals for the District of Columbia Circuit has held that

the gravamen of a *quid pro quo* claim is that a tangible job benefit or privilege is conditioned on an employee's submission to sexual black-mail and that adverse consequences follow from the employee's refusal.

*Gary v. Long,* 59 F.3d 1391, 1395 (D.C.Cir. 1995). The *Gary* court further ruled that, in order to prove *quid pro quo* sexual harassment, a plaintiff must demonstrate that "the supervisor wielded the authority

entrusted to him to subject the victim to submit to unwelcome sexual advances." *Gary,* 59 F.3d at 1396.

Addressing the issue of *quid pro quo* sexual harassment in the context of a summary judgment motion, the D.C. Circuit has ruled that once a defendant has offered credible evidence of a reason for a promotion decision that is free of sex discrimination, plaintiff can "defeat the defense motion for summary judgment only by offering direct or indirect evidence of discrimination." *Carpenter v. Fed. Nat'l Mortgage Ass'n,* 165 F.3d 69, 72 (D.C.Cir. 1999). Moreover, it has found that the District of Columbia "follows the same formula" in interpreting its Human Rights Act. *Id.* Indirect evidence from which a jury could find that the stated reasons behind an employment decision are pretextual is generally sufficient, and such undermining evidence will usually serve "to get a plaintiff's claim to the jury." *Id.*

█ In the instant case, the incidents that plaintiff describes, and whose truth the Court must accept, are not severe or pervasive enough to constitute a hostile work environment. Though plaintiff is a woman, and thus a member of a protected class, the events she chronicles do not meet the criteria specified by the DCHRA and Title VII. Specifically, alleged harassment is generally not held to be sufficiently severe or pervasive to create a hostile work environment where it is limited to isolated incidents. *Best,* 484 A.2d at 980; *see also Russ v. Van Scoyoc Assoc., Inc.,* 122 F.Supp.2d 29, 32–33 (D.D.C.2000)(holding that there was no violation of law where company vice president made sexually explicit remarks to plaintiff, told her he admired her breasts, that he wanted to have sex with, and perform oral sex, upon her, and that she could make more money working at Hooter's than with her current employer.) With respect to the hostile environment standard, the Supreme Court has held that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Russ,* 122 F.Supp.2d at 33 (quoting *Faragher v. Boca Raton,* 524 U.S. 775, 778, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

Plaintiff's testimony in this case shows that Bynum invited her to his hotel room on one occasion and asked her why she refused to do so at a subsequent point in time. Even according to plaintiff's complaint, Bynum made no additional offensive comments to her after the second incident. As defendant correctly asserts, "Bynum's alleged conduct does not begin to approach the conduct found not to be sufficiently severe or pervasive to be actionable in the cases cited above." Def.'s Mot. at 12.

█ Plaintiff herself concedes that hers is not a hostile environment claim, but rather a "traditional *quid pro quo* sexual harassment claim" under *Burlington Industries.* Pl.'s Opp'n at 8. As noted previously, for purposes of *quid pro quo* claims, defendants must present credible evidence of non-discriminatory reasons for engaging in the conduct that is alleged. In the case at hand, defendant's position *vis a vis* plaintiff's promotion is that plaintiff was not qualified and did not meet the minimum employment requirements set forth by Warden Cross. Specifically, defendant argues that plaintiff did not have the prior supervisory experience required. While the vacancy notice did not specify prior supervisory experience as a requirement, it is undisputed that Warden Cross articulated it as such prior to the commencement of interviews and hiring.

As indicated above, to defeat defendant's summary judgment motion with respect to plaintiff's *quid pro quo* claim, plaintiff must show direct or indirect evidence of

discrimination. The relevant inquiry in this regard is whether a jury could find that the reason advanced by defendant for its failure to grant plaintiff a promotion was merely pretextual. *Carpenter,* 165 F.3d at 72. The Court is tasked, therefore, with establishing whether there are any material facts in dispute which, if proven, might provide the requisite evidence.

While plaintiff maintains that defendant's reasons for failing to promote her are "dubious," defendant submits that there is no evidence to contradict the warden's testimony that it was her unilateral decision to consider only applicants with past supervisory experience. Def.'s Reply at 7. Plaintiff advances four facts that, she asserts, provide such evidence: (1) Bynum informed her that she was rejected for the promotion at the same time that she rejected his second unwanted sexual advance towards her; (2) Bynum testified that he, rather than the warden, made the decision to require prior supervisory experience as a minimum standard for the job; (3) defendant had not previously required prior supervisory experience as a minimum standard for the job; and (4) defendant never required an applicant for the job of Assistant Shift Commander to have supervisory experience before plaintiff applied for the job and rejected Bynum's advances.

With regard to the first factor, while defendant does not address this precise point and the contemporaneity of the two acts may raise questions about Bynum's personal motivations, the issue is only material for summary judgment purposes if Bynum is found to have exercised influence over the hiring process. That question, in turn, is encompassed in the second factor identified by plaintiff. Plaintiff is referring to an alleged inconsistency between Bynum's deposition testimony and the affidavit submitted by Warden Cross and Bynum. Plaintiff notes that, in his deposition, Bynum testified that his job was to review applications submitted for the Assistant Shift Commander position and to screen applicants for the position. In that sense, plaintiff asserts, Bynum claimed that he indirectly made the decision that she did not have the minimum qualifications. Plaintiff notes that, in his deposition, Bynum further testified that he asked Warden Cross whether defendant would waive any qualifications for the job and that she informed him that she would not interview anyone who did not possess the requisite qualifications. In his affidavit, Bynum stated that Warden Cross told him before the applications came in that defendant would not waive any qualifications. In addition, Bynum's affidavit stated that Warden Cross specifically told him that prior supervisory experience was a qualification she would not waive. The Court is not persuaded that there is any meaningful discrepancy between Bynum's deposition and affidavit. The undisputed evidence shows that Warden Cross instructed both Byrd and Bynum to consider only applicants who were Senior Correctional Officers or had equivalent supervisory experience. Plaintiff presents no evidence beyond "mere unsupported allegations" that Bynum had any input into the decision not to interview applicants lacking supervisory experience. *Rollerson,* 1996 WL 365406 * 2. The third and fourth factors set forth by plaintiff are not disputed and, in light of Bynum's lack of influence over the hiring process, provide no evidence of defendant's discriminatory intent.

Having considered the factors advanced by plaintiff as indicative of defendant's "dubious" or "pretextual" intent, the Court accepts defendant's contention that there is no evidence to cast doubt on its explanation. There is no dispute that, in the

present case, Warden Cross sought to hire only applicants with supervisory experience and that all the applicants, male and female, who did not have supervisory experience failed to receive invitations for interviews. Finally, it is undisputed that all Assistant Shift Commanders who have been selected since Assistant Warden Byrd commenced work at the CTF in March 2002 have been Senior Correctional Officers or have had equivalent supervisory experience. Def.'s Reply at 6. Because there is no evidence that Bynum had any role in determining the qualifications for applicants seeking the position that plaintiff sought, the Court has no reason to believe that the reason articulated for defendant's failure to promote plaintiff was pretextual. As Bynum did not have the authority to make direct hiring decisions, he did not wield the authority entrusted to him, as a supervisor, to subject the victim to submit to unwelcome sexual advances under *Gary.*

 A plaintiff seeking to prove sex or gender discrimination pursuant to the DCHRA must, in the first instance, "make a *prima facie* showing of discrimination by a preponderance of the evidence." *Arthur Young & Co. v. Sutherland,* 631 A.2d 354, 361 (D.C.1993). A *prima facie* case may be made by demonstrating that: (1) the employee was a member of a protected class; (2) the employee was qualified for the [position or] promotion; (3) the employee was rejected upon seeking the [position or] promotion; and (4) a substantial factor in that rejection was [the employee's] membership in the protected class. *Id.* Once a *prima facie* case has been established, a rebuttable presumption arises that the employer's conduct constituted unlawful discrimination. *Id.* (citing *Shaw Project Area Comm. v. D.C. Comm'n on Human Rights,* 500 A.2d 251, 254 (D.C.1985)). The burden then shifts to

the employer to rebut the presumption by "articulating some legitimate nondiscriminatory reason for employment action at issue." *Sutherland,* 631 A.2d at 361. Finally, if the employer succeeds in setting forth such a reason, the burden shifts back to the employee to prove by a preponderance of the evidence "that the employer's stated justification 'was not its true reason but was in fact merely a pretext' to disguise discriminatory practice." *Id.* (citing *Atlantic Richfield Co. v. D.C. Comm'n on Human Rights,* 515 A.2d 1095, 1100 (D.C. 1986)).

In the case at bar, plaintiff fails to establish a *prima facie* case of sex discrimination. Though the vacancy notice for the Assistant Shift Commander position was silent on the subject of previous supervisory experience, the undisputed evidence shows that Warden Cross established such experience as a necessary condition. Because plaintiff did not have prior supervisory experience, she fails to meet the second prong of the four-prong test for *prima facie* discrimination. Even assuming, *arguendo,* that plaintiff possessed the minimum job qualifications, that would not suffice to change the result. Plaintiff has advanced no evidence that sex was a substantial factor in her promotion rejection. Plaintiff was treated in exactly the same way as were other applicants, including male applicants, who lacked supervisory experience. As noted above, Bryan, Cobb, and Idleburg also received memoranda explaining why their applications for jobs had been rejected. All the applicants selected for interviews, and both of those who were ultimately selected for the positions, had supervisory experience. *See, e.g., Scales v. Bradford & Co.,* 925 F.2d 901, 907 (6th Cir.1991) (employer's promotion of a male instead of a female was not pretextual where the male had experience that the female did not.) There is no factual dispute about what took place, and

in the absence of evidence casting doubt on defendant's explanation, plaintiff fails to meet the fourth discrimination requirement. *See, e.g., Beckwith v. Career Blazers Learning Ctr. of Washington, D.C.*, 946 F.Supp. 1035 (finding that plaintiffs failed to establish that race was a factor, let alone a substantial factor, in their discrimination and failure to promote claims.)

Because plaintiff has failed to establish a *prima facie* case of discrimination, the Court need proceed no further.

### B. Retaliation

■ The elements of a retaliation claim under the DCHRA are the same as those under the federal employment discrimination laws. *Green*, 652 A.2d at 45. A *prima facie* case of retaliation requires a plaintiff to show: (1) that she was engaged in a statutorily protected activity; (2) that her employer took adverse personal action against her; and (3) that a causal connection existed between the two. *Id.* at 44; *Barnes v. Small*, 840 F.2d 972, 976 (D.C.Cir.1988). Once a *prima facie* case of retaliation has been established, the burden shifts to the employer to produce evidence that "would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Beckwith*, 946 F.Supp. at 1043 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If a defendant satisfies its burden of production, the plaintiff must produce evidence that the reasons offered were not the true reasons for the adverse action but a mere pretext for discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089.

■ In the present case, plaintiff sets forth four factors that, in her opinion, provide evidence of defendant's retaliation: (1) defendant for the first time required applicants to have prior supervisory experience and rejected plaintiff's application; (2) defendant required plaintiff to pass through x-ray machines while she was pregnant but did not require other pregnant women to do the same; (3) defendant suspended plaintiff without pay for fourteen days because she followed her physician's instructions and refused to pass through the x-ray machine; and (4) defendant upheld the fourteen-day suspension without pay even after having been presented with a physician's notes.

Plaintiff is alleging retaliation for rejecting Bynum's sexual advances. As evidenced by defendant's efforts to investigate the alleged harassment, there is no question that such action is statutorily protected. With regard to the second prong of the retaliation test, it is equally clear that, by suspending plaintiff, defendant took adverse personal action against her. The third prong, however, presents the stumbling block. First, as discussed above, plaintiff has failed to produce evidence that Bynum had any meaningful role in the hiring decisions. In the absence of such evidence, the Court is hard put to see how her rejection of his advances and her suspension were connected by a causal relationship. There is no evidence suggesting that Bynum had a role in the disciplinary hearings or in the decision to suspend plaintiff.

Even if plaintiff were to establish a *prima facie* case of retaliation, defendant has offered sufficient evidence for a rational jury to conclude that its actions were motivated by plaintiff's actions rather than defendant's "discriminatory animus." Specifically, defendant has offered evidence showing repeated "insubordination" by the plaintiff. Plaintiff offers no evidence that the reasons articulated by defendant are pretextual.

**Conclusion:**

Plaintiff in the present case has failed to present sufficient evidence to defeat defendant's summary judgment motion. With respect to plaintiff's *quid pro quo* claim, there are no material facts in dispute, and plaintiff has offered no evidence casting doubt on defendant's credibly explanation. Similarly, plaintiff has failed to provide evidence indicating that defendant's articulated reasons for suspending her following the disciplinary hearing are pretextual. Finally, with regard to the sex discrimination charge, plaintiff has failed to establish a *prima facie* case.

An appropriate order accompanies this memorandum opinion.

### *ORDER AND JUDGMENT*

Pursuant to Fed.R.Civ.P. 56 and for the reasons stated by the Court in its Memorandum Opinion docketed this same day, it is by the Court hereby

**ORDERED** that defendant's motion for summary judgment is **GRANTED**; and it is

**FURTHER ORDERED** and **ADJUDGED** that, in accordance with Fed. R.Civ.P. 58, the Clerk shall enter final judgment in favor of defendant, CCA, and against plaintiff, Nicole McCain, which judgment shall declare that defendant did not sexually harass plaintiff or retaliate against her for rejecting the advances of CCA employee Larry Bynum.