189 F.3d 529 (7th Cir. 1999)
 Valeria Smith, Plaintiff-Appellant,
v.
Michael F. Sheahan, Sheriff of Cook County, in his individual and official capacities; Cook County Sheriff's Department; and Ronald Gamble, Defendants-Appellees.
 No. 98-2445
 United States Court of Appeals, Seventh Circuit
 Argued December 4, 1998
Decided August 27, 1999
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 95 C 7203--William T. Hart, Judge.
 Before Bauer, Diane P. Wood, and Evans, Circuit Judges.
 Diane P. Wood, Circuit Judge.
 
 
 1
 Valeria Smith and Ronald Gamble are both guards at the Cook County Jail, a facility administered by the Cook County Sheriff's Department under the supervision of Sheriff Michael Sheahan. Gamble was none too pleasant to his female colleagues in general, but one day he took matters further and violently assaulted Smith while she was working her shift. Smith complained internally, but to little avail. She also filed a criminal assault claim against Gamble (which resulted in a conviction), and finally, in light of the unsatisfactory reaction of the Sheriff's Department to her complaints, she brought the present action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq., claiming that she had been subjected to sex discrimination in the form of a hostile work environment. The district court granted summary judgment to the Sheriff on the ground that Smith's experiences of harassment were too isolated to be actionable under Title VII and that, in any event, the Sheriff's Department's response to the assault was sufficient to shield it from liability. Although we agree that the district court correctly granted summary judgment for Sheriff Sheahan in his individual capacity, we find that the evidence Smith presented requires a trial on her claims against the Sheriff's Department (i.e. the official capacity claims). We therefore reverse and remand this part of the case for further proceedings.
 
 
 2
 * Because this matter was resolved at summary judgment and no credibility determinations have yet been made, we relate the facts and draw our inferences in the light most favorable to Smith. Popovits v. Circuit City Stores, Inc.,183 F.3d 726, 732 (7th Cir. July 15, 1999).
 
 
 3
 On August 30, 1992, during their regular shifts at the Cook County Jail, Gamble entered Smith's work station to collect inmate commissary slips. A dispute ensued, during which Gamble called Smith a "bitch," threatened to "fuck [her] up," pinned her against a wall, and twisted her wrist severely enough to damage her ligaments, draw blood, and eventually require surgical correction. Smith immediately reported the incident to her supervisor, Lieutenant Jessie Anderson, who recommended that Smith seek medical treatment. Lieutenant Anderson also questioned witnesses, reported the attack up the chain of command, and took action to keep Smith and Gamble separated thereafter.
 
 
 4
 The Sheriff's Department's response was an institutional shrug of the shoulders. It neither investigated further nor did it discipline Gamble. Instead, in response to Smith's request that further action be taken, one Investigator Sullivan made light of the incident and jokingly suggested that Smith should "kiss and make up" with Gamble. The Department responded in much the same way to other complaints of Gamble's hostile behavior toward women in the workplace. In order to show that Gamble's actions were because of her sex, rather than randomly violent, Smith presented affidavits from six other female Cook County Jail guards tending to show that Gamble has an inglorious history of offensive interactions with his female co-workers, and that the Department knew this. For example, Yvonne Averhart's affidavit related two separate incidents with Gamble. In 1991, he made sexualized comments about her body as she passed through the scanning device he was operating at the entrance to the jail. When she objected, he became hostile and called her a "bitch." Other officers intervened to keep the situation from escalating further. In 1995, Gamble demanded that Averhart give him extra food for some of the inmates from the central kitchen, where she was working. She refused because he lacked the proper authorization. Gamble again became hostile, repeatedly calling her a "bitch" and threatening to "kick [her] ass." Another officer intervened, pulling Gamble away from Averhart and trying to calm him down. Averhart reported the latter incident to her supervisor, but no action was taken on her complaint.
 
 
 5
 Officer Kim Pemberton described an incident with Gamble in 1990 or 1991 that occurred as he was passing through the entrance at which she was posted to check identification badges. He refused to show her his ID, and she in turn refused to let him enter. When she relented, Gamble made a derogatory comment, to which she responded in kind. Gamble then tried to storm the area where Pemberton was working, issuing vulgar threats of physical harm similar in tone and content to those that we have already recounted. A supervising officer held Gamble back to keep him from making good on his threats and told Pemberton to write up the incident. When she gave her report to another superior, he ripped it up with the explanation that "it takes two to fight."
 
 
 6
 Female Cook County Jail Officers L.A. Hempen, Renee Hardimon, Myra Greene, and Constance Wilson had similar encounters with Gamble. Together with Officers Averhart and Pemberton, these women officers related a total of seven incidents in which Gamble became verbally abusive and physically threatening, though none of the other incidents escalated into the type of assault Smith suffered. Three of the incidents pre-dated Gamble's August 1992 assault on Smith (one in 1989 and two in 1991), and four have occurred since then. Two of the disturbances went unreported, but reports were filed about the other five. To the officers' knowledge, the Sheriff's Department took no action in regard to the latter group. Gamble was well aware that the Department had a practice of taking no action on such matters, according to Officer Hardimon, who noted that Gamble taunted her after she reported her December 1992 run-in with him by saying that his supervisor "won't do anything, anyway."
 
 
 7
 Disappointed with the response of the Sheriff's Department, Smith turned to the courts. She filed a criminal complaint against Gamble in Cook County Criminal Court. On February 25, 1993, that court found him guilty of criminal battery and placed him under court supervision. Although Gamble's superiors at the Sheriff's Department were aware of this criminal conviction, not only did they disregard it--they promoted him instead. Smith, on the other hand, has been reassigned to guard inmates with psychiatric problems, a transfer she considers tantamount to a demotion.
 
 
 8
 Smith filed charges with the EEOC, and she also initiated a two-count civil action in the Circuit Court of Cook County, filing her third amended complaint on November 8, 1995 after she received her right-to-sue letter. The defendants removed the case to federal court on December 8, 1995. Count I of the complaint alleged a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq., against Sheriff Sheahan in his official and individual capacities and against the Cook County Sheriff's Department. (Smith has since conceded that she cannot state a claim against Sheriff Sheahan individually, and that the Sheriff's Department has no legal existence separate from that of Sheriff Sheahan in his official capacity.) Count II alleged a state law tort claim against Gamble for assault and battery. In light of Gamble's admitted criminal conviction for these acts, the district court entered judgment on the pleadings in Smith's favor on Count II and later dismissed that part of the case based on a settlement. Smith instead appeals from the court's entry of summary judgment in favor of Sheriff Sheahan in his official capacity on the Title VII claim.
 
 II
 
 9
 We review a grant of summary judgment de novo because it presents pure questions of law. Stop- N-Go of Madison, Inc. v. Uno-Ven Co., 184 F.3d 672, 676-78 (7th Cir.1999). Summary judgment may not be entered unless there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Where, however, there are such disputed questions of fact, and the plaintiff has presented some evidence to support the bare allegations of her complaint, Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997), she is entitled to proceed to trial.
 
 
 10
 When sexual harassment in the workplace alters the terms and conditions of someone's employment, it falls within the scope of the prohibition against sex discrimination in Title VII. See Burlington Industries, Inc. v. Ellerth, 118 S.Ct. 2257, 2264 (1998). In order to survive summary judgment, the employee must present evidence that would establish that the actions in question created the sort of hostile work environment that offends Title VII. Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997); Carr v. Allison Gas Turbine Div., Gen. Motors Corp., 32 F.3d 1007, 1009 (7th Cir. 1994). Not all offensive workplace behavior violates the law. See Oncale v. Sundowner Offshore Servs., Inc., 118 S.Ct. 998, 1002 (1998) (Title VII is not a code of civility); Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1144 (7th Cir. 1997); Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995); Carr, 32 F.3d at 1009. Title VII does, however, prohibit certain forms of workplace discrimination. To be actionable, the offensive conduct must be based on one of the characteristics protected by Title VII, such as sex. 42 U.S.C. sec. 2000e-2(a)(1); see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993) (Ginsburg, J., concurring) ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.") The conduct must also be so severe or pervasive as to alter the terms or conditions of the employment relationship. Ellerth, 118 S.Ct. at 2264-65; Harris, 510 U.S. at 21; Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986). Second, the employee must establish a basis for making the employer liable for the discriminatory acts. If, as in the present case, the harassment comes at the hands of a co-worker, the employer will be vicariously liable for the discriminatory acts if it negligently failed to take reasonable steps to discover or remedy the harassment. See Wilson v. Chrysler Corp., 172 F.3d 500, 508 (7th Cir. 1999); Perry, 126 F.3d at 1013.
 
 
 11
 Accepting Smith's account as true, Gamble's actions constitute prohibited sexual harassment. Smith presented sufficient evidence to raise the inference that Gamble targets co-workers for his assaultive outbursts based on their sex. One method of demonstrating that harassment is based on sex is to provide evidence of discrepancies in how the alleged harasser treats members of each sex in a mixed-sex workplace. Oncale, 118 S.Ct. at 1002. Smith furnished affidavits from a number of other guards documenting Gamble's recurrent hostile behavior toward his female co-workers. These incidents are unmatched by similar reports of verbally and physically aggressive behavior toward male co-workers. This evidence would permit a trier of fact to draw the inference that Gamble chooses to harass women but not men. Depending on how the jury evaluates them, the explicitly gendered and sexually charged epithets Gamble hurls at his victims ("I'm going to fuck you up, bitch") may provide additional evidence that Gamble's hostility toward his female co- workers is based on their sex. See Carr, 32 F.3d at 1010; see also Johnson v. Hondo, Inc., 125 F.3d 408, 412 (7th Cir. 1997). It makes no difference that the assaults and the epithets sounded more like expressions of sex-based animus rather than misdirected sexual desire (although power plays may lie just below the surface of much of the latter behavior as well). Either is actionable under Title VII as long as there is evidence suggesting that the objectionable workplace behavior is based on the sex of the target. Oncale, 118 S.Ct. at 1002.
 
 
 12
 A jury would also be entitled to conclude that the assault Smith suffered was severe enough to alter the terms of her employment even though it was a single incident. The district court held to the contrary; it opined that sex-based harassment can never be actionable unless it is repeated. This was error: the Supreme Court has repeatedly said, using the disjunctive "or," that a claim of discrimination based on the infliction of a hostile working environment exists if the conduct is "severe or pervasive." See Ellerth, 118 S.Ct. at 2265; Faragher v. City of Boca Raton, 118 S.Ct. 2275, 2283 (1998); Oncale, 118 S.Ct. at 1001; Harris, 510 U.S. at 21; Meritor Sav. Bank, 477 U.S. at 67. In any case, the ultimate question is thus whether the harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Meritor Sav. Bank, 477 U.S. at 67 (internal citation omitted) (emphasis added). In answering this question, courts must examine all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23; see also Baskerville, 50 F.3d at 430. Although less severe acts of harassment must be frequent or part of a pervasive pattern of objectionable behavior in order to rise to an actionable level, "extremely serious" acts of harassment do not. Faragher, 118 S.Ct. at 2283.
 
 
 13
 The Sheriff argues that only sexual assaults qualify as isolated occurrences severe enough to alter the conditions of a victim's employment without proof of additional incidents. This position, however, loses sight of the Court's admonition in Oncale that the only requirement is that the adverse action must be because of the victim's sex (or other protected characteristic). In a sex discrimination case, the action need not be inspired by sexual desire, assuming for the sake of argument that rape or sexual assault is anything but an act of violence. Breaking the arm of a fellow employee because she is a woman, or, as here, damaging her wrist to the point that surgery was required, because she was a woman, easily qualifies as a severe enough isolated occurrence to alter the conditions of her employment. Compare Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1072 (10th Cir. 1998) (finding a "single incident of physically threatening conduct" in which a customer pulled his waitress by the hair, grabbed her breast, and placed his mouth on it severe enough to create an actionable hostile work environment).
 
 
 14
 Moreover, on the facts of this case as they now stand, the assault was part of a broader pattern of behavior hostile to women. Smith has provided evidence that Gamble has repeatedly assailed his female co-workers with verbal abuse and threats of physical harm. Sheriff Sheahan argues that we should disregard these other incidents because they did not happen to Smith, but again we disagree. Although they may be less important in defining her work environment than the assault she experienced firsthand, incidents "directed at others and not the plaintiff . . . do have some relevance in demonstrating the existence of a hostile work environment." Gleason, 118 F.3d at 1144. Given the totality of the circumstances here, a jury reasonably could conclude that Gamble's outbursts created an atmosphere so hostile to Smith on the basis of her sex that it effectively altered the terms of her employment.
 
 
 15
 Another point deserves mention. Relying on Rabidue v. Osceola Refining Co., 805 F.2d 611, 620-21 (6th Cir. 1986), a much-criticized opinion overruled on other grounds in Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993), the district court partially discounted the seriousness of Gamble's misconduct because Smith "voluntarily" stepped into the "aggressive setting" of the jail. According to Rabidue, women or minorities who dare to work in settings that have traditionally been hostile to them assume the risk of some abuse and cannot complain to the courts unless the abuse is out of line with the subculture of that particular work setting. Rabidue, 805 F.2d at 621. To hold otherwise, the Rabidue court thought, would be to expect unrealistically that Title VII would occasion a "magical transformation in the social mores of American workers." Id. Under this logic, an African-American worker in an otherwise all-white workplace in an area with a history of race discrimination would have to withstand a heightened degree of race-based abuse before he could bring an actionable claim than the same worker in a setting with a greater tradition of interracial tolerance. Likewise, under this view, a court should take Smith's complaints of sex- based assault less seriously because she knowingly chose to work in the traditionally male-dominated setting of a jailhouse.
 
 
 16
 Even if this aspect of Rabidue survived Harris, we think it did not outlive Oncale. It is true that the severity of alleged harassment must be assessed in light of the social mores of American workers and workplace culture, see Oncale, 118 S.Ct. at 1003, but nothing in Oncale even hints at the idea that prevailing culture can excuse discriminatory actions. Employers who tolerate workplaces marred by exclusionary practices and bigoted attitudes cannot use their discriminatory pasts to shield them from the present-day mandate of Title VII. There is no assumption-of-risk defense to charges of workplace discrimination. At the same time, we recognize that the culture of workplaces does differ from setting to setting. As the Supreme Court instructed in Oncale, juries--and judges-- must bring their "common sense" and "an appropriate sensitivity to social context," id., to bear when they make the threshold determination whether certain forms of behavior, in a given work setting, are discriminatory or not. Here, for example, its Rabidue analysis aside, the district court concluded that "[t]his was a severe confrontation," that "viewed objectively, Gamble's conduct would appear to be excessive," and that "recourse to physical violence by a co- worker would be unacceptable to the average employee." We agree.
 
 III
 
 17
 The final question is whether Smith has provided evidence that the Sheriff's Department was negligent in preventing or remedying the harassment. As for prevention, the Sheriff argues that his department had no knowledge of the incidents Smith's female co-workers claim to have reported before Smith was assaulted and therefore had no duty to prevent the assault. Given the officers' sworn affidavits that they made reports to their superiors that were simply ignored, this is a disputed issue of material fact that cannot be resolved at summary judgment. See also Wilson, 172 F.3d at 509.
 
 
 18
 The remainder of the Sheriff's argument rests on the assertion that Lieutenant Anderson's separation of Smith and Gamble adequately discharged the Department's duty to remedy the harassment because it prevented further incidents between the two. But not every preventive measure will be a proper remedy, as is readily apparent when we consider that the Department could also have prevented recurrences by firing Smith--an obviously impermissible reaction to her complaint. The question is instead whether the Sheriff's Department's response to the harassment was a reasonable one, designed to remedy the illegal harassment, or a negligent one that did not adequately respond to the situation in its midst. Just as an employer may escape liability even if harassment recurs despite its best efforts, so it can also be liable if the harassment fortuitously stops, but a jury deems its response to have fallen below the level of due care. See Baskerville, 50 F.3d at 432. "[W]hat is reasonable depends on the gravity of the harassment." Id.
 
 
 19
 In light of the Sheriff's Department's failure to discipline Gamble for so serious an infraction as a criminal assault, its decision instead to promote him, Gamble's recurrent hostilities toward other female guards even after his assault on Smith, his taunts to one of his victims that his supervisors wouldn't penalize him for his actions, Investigator Sullivan's suggestion to Smith to "kiss and make up," and Smith's reassignment to less desirable duty, we think a jury could reasonably conclude that the Sheriff's Department's tepid response of separating Smith and Gamble did not effectively remedy the harassment problem.
 
 
 20
 Because a jury could find that Smith was subject to sex-based harassment in violation of Title VII and that the Sheriff's Department was negligent in failing to prevent or remedy the harassment, we Reverse the district court's grant of summary judgment for the Sheriff's Department and Remand the case for further proceedings consistent with this opinion. The claims against the Sheriff in his individual capacity were correctly dismissed, and to that extent we AFFIRM the district court's judgment. The costs of appeal shall be assessed against the Sheriff's Department.
 
 
 21
 BAUER, Circuit Judge, dissenting. I respectfully dissent.
 
 
 22
 It is my firm conviction that this is a case of battery. To expand it into a Title VII case because the victim of this bully is a woman reads more into Title VII than I think is appropriate. Taking the complaint as true, it still accuses an absolute boob of punching out a weaker person-- the mark of a coward but that isn't covered by Title VII. I would affirm. She has a cause of action all right, but a state court tort for trespass vi et armis, not Title VII.