In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1849

CRYSTAL LONGSTREET,

Plaintiff-Appellant,

v.

ILLINOIS DEPARTMENT OF CORRECTIONS
and LAMARK CARTER, individually and
in his official capacity as Warden,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 2490--James B. Zagel, Judge.

Argued December 3, 2001--Decided January 14, 2002

Before POSNER, EVANS, and WILLIAMS,
Circuit Judges.

EVANS, Circuit Judge. Crystal Longstreet, a correctional officer at the Joliet/1 Correctional Center, sued her employer, the Illinois Department of Corrections, and Warden Lamark Carter, alleging that she was sexually harassed and retaliated against after complaining about it. Longstreet's complaint centered on two distasteful workplace incidents she encountered during a 30-day period in 1998. The district court granted summary judgment for the defendants and Longstreet appeals.

The first incident occurred when Longstreet reported for her morning shift at Joliet's Tower 2 to take over fromRonald Bester, a correctional officer whose shift was over. Bester, a crude fellow who deserves absolutely no style points, told Longstreet that he had been trying to masturbate all night but that he kept getting interrupted. He then yelled at Longstreet and said she should bring him a cup of water and soap. He said this as he stood in the stairwell masturbating in front of her. The next day, Longstreet complained about the incident to a prison chaplain, and a few days later she prepared an incident

report. Warden Carter began an investigation and placed Bester on a paid leave pending the results of his investigation. The Department of Corrections (DOC) continued to investigate the incident and, following a hearing, suspended Bester. A month later, it recommended that Bester be discharged for cause. Apparently seeing the writing on the wall, Bester resigned rather than face a discharge hearing. All in all, Bester was temporarily removed from Joliet within days of Longstreet's complaint and permanently out of a job in 4 months.

The second incident Longstreet complains of occurred 30 days after the encounter with Bester when another correctional officer, Ronald Bills, allegedly rubbed his penis across her buttocks. Longstreet again prepared a report and informed Warden Carter of the incident. The incident was investigated and four witnesses to the event, as identified by Longstreet, were interviewed. It is undisputed that none of the four corroborated Longstreet's version of the event, and the investigator (Janet Richmond acting at Warden Carter's request) concluded that the allegation of sexual harassment could not be substantiated. Bills, however, promised the investigator that he would have no further contact with Longstreet, a promise which has been kept.

It is, we think, difficult to determine which of the two incidents Longstreet complains about, if true, was worse. Both were close to 9's on a scale of 10. But this is not a lawsuit against Bester and/or Bills. It's a Title VII claim which seeks to hold an employer financially responsible for the irresponsibility of a co-worker. And in a case involving sexual harassment by a co-worker, an employer is only liable for employment discrimination under Title VII, 42 U.S.C. sec. 2000e et seq., if it negligently failed to take steps to remedy the illegal harassment. Smith v. Sheahan, 189 F.3d 529 (7th Cir. 1999).

Given that standard and the facts alleged in this case, one may be excused for questioning just why Longstreet filed her lawsuit. She cannot contend that removing Bester from Joliet (in all practical respects he was fired) was not

sufficient to remedy the harassment. She can hardly contend that the isolated incident with Bills--which by the way she does not emphasize on appeal--could be the basis of an actionable sexual harassment claim against her employer under Title VII as we have construed it. The answer seems to be that her real contention is that the DOC was negligent not so much in its response to her complaints but in not preventing the harassment in the first place. She says that both Bester and Bills harassed others before her. The contention is that if the DOC had taken reasonable steps in connection with those prior incidents, these unpleasant things would not have happened to her.

The facts of this case do not support Longstreet's theory. The prior incidents on which she relies do not show that the DOC was negligent in its previous dealings with Bester. In one prior incident Bester apparently offered Sergeant Tracey Terry $100 to "suck his dick" and $200 to have sex with him. Terry complained to her captain and to Samantha Franklin, the officer responsible for harassment complaints. Terry told Franklin she never wanted to work with Bester again. Bester was reassigned and Terry got her wish; she never had to work with him again. Franklin thought this resolved the situation and, in fact, there is no evidence that Terry was ever harassed again. Longstreet contends that the employer's response was insufficient because, even if Terry was satisfied with the resolution of her case, the DOC had an independent obligation to make a further investigation and to make certain that Bester clearly understood that his reassignment was a result of his bad behavior.

The only other evidence of prior incidents consists of vague hearsay allegations that both Bester and Bills harassed other women in some way, but, in what is a fatal flaw, there is no allegation that any of these incidents were reported to a supervisor. We doubt that these facts would support a claim by any of the other women. We do not know, of course, because those cases are not before us. Longstreet uses these prior incidents to imply that if the men had been properly dealt with in the other

incidents, they would not have been recidivists.

We have recognized that deterrence is an objective in imposing liability on employers for the creation of a hostile environment by a plaintiff's co-workers. An employer's response to allegations of harassment "must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made." Brooms v. Regal Tube Co., 881 F.2d 412, 421 (7th Cir. 1989); McKenzie v. Illinois Dep't of Transp., 92 F.3d 473 (7th Cir. 1996). What is a reasonable response depends on the gravity of the harassment. Baskerville v. Culligan Int'l Co., 50 F.3d 428 (7th Cir. 1995). An employer must take more care to protect employees, depending on the seriousness of the harassment. See Ellison v. Brady, 924 F.2d 872 (9th Cir. 1991). In this case, we must determine how far those principles can be stretched.

Here, the only prior incident with any potential legal meat is the Terry/Bester episode. The response to Terry's complaint solved her problem with Bester; he never harassed her again. The proper measure of the reasonableness of the DOC's response was dependent on the facts and circumstances of that case. Short of litigating Terry's situation in Longstreet's case, there is little to be said about it except that the DOC response was not obviously unreasonable.

It would push the role of deterrence too far to say that a response which seemed to be within the realm of reasonableness in one situation can, if ultimately it did not have the proper deterrent effect, be the sole basis for liability in another case even if the employer's response in the second case was clearly sufficient. The DOC's response to Terry's complaint was not patently unreasonable and it solved her problem with Bester. But it did not cure him of disgusting and boorish behavior, as his interaction with Longstreet shows. In response to Longstreet's complaint, however, Bester, in effect, was discharged, which by anyone's measure has to be considered an adequate response. But nevertheless, Longstreet, in 20/20 hindsight, says that she would not have had to suffer the indignity imposed on her if the DOC had

taken different actions in regard to the Terry complaint.

Although Longstreet's argument has superficial appeal, we cannot conclude that an employer is subject to what amounts to strict liability for every second incident of harassment committed by an employee, especially when the first incident was far less serious than the second. Had Bester's acts toward Terry been more severe--and as a result he had merely been reassigned to another duty station--we would be faced with a different situation. Or were there actual nonhearsay complaints that he harassed several other women, and that despite complaints he had not been disciplined, the situation would also be different. But what we have here is, in effect, one prior incident which may or may not rise to the level of actionable harassment and which was not ignored by the employer, followed by a second incident which resulted in the de facto discharge of the harasser. To say that the employer must be held liable in the second incident would be to impose strict liability on an employer any time an employee commits two acts of harassment. It would be a two-strikes-and-you're-out rule. To be safe from liability, an employer would always have to discharge a person accused of any kind of harassment because no employer can predict with certainty, any more than any judge sentencing a criminal defendant can predict with certainty, that an offender will not offend again.

Longstreet also contends that she was retaliated against for complaining about these incidents of harassment. She can prevail on a retaliation claim if she can show that she opposed an unlawful employment practice under Title VII, that she was the object of an adverse employment action, and that the adverse action was caused by her opposition to the unlawful employment practice. Hamner v. St. Vincent Hosp. and Health Care Center, Inc., 224 F.3d 701 (7th Cir. 2000).

Longstreet says that it was retaliation to move her from what had been a permanent duty station in Tower 2 to a new position in Tower 5. Contrary to usual practice, which was to rotate officers among duty stations, Longstreet had been given a permanent duty station

because she was diagnosed with multiple sclerosis soon after she began her employment with the DOC, some 9 years before her encounter with Bester. She contends that the job requirements on Tower 2 were easier for her to perform than those on Tower 5. We note in passing that a claim Longstreet brought under the Americans with Disabilities Act was dismissed based on the State's Eleventh Amendment immunity, pursuant to University of Alabama v. Garrett, 531 U.S. 356, 121 S. Ct. 955 (2001). Despite the fact that there is no ADA claim, if the transfer to Tower 5 was, in fact, an adverse employment action taken because of Longstreet's opposition to sexual harassment, the claim is actionable under Title VII.

That is a big "if." The evidence that the Tower 5 duties were more onerous, thus making the transfer an adverse employment action, is way too thin. It consists of Longstreet's description in her deposition of the difficulties she had performing the duties. However, she was apparently able to perform them without much of a problem. She worked at Tower 5 almost 2 years before she was transferred back to Tower 2.

Even were she to show that she suffered an adverse employment action, in order to prevail on her retaliation claim she must also show a connection between the transfer and her complaints of harassment. Her only evidence of a connection is the timing; the transfer occurred 4 months after the second complaint. This is insufficient. See Sauzek v. Exxon Coal USA, 202 F.3d 913 (7th Cir. 2000).

Similarly, other alleged adverse employment actions do not carry the day. For instance, she complains of negative performance evaluations and being required to substantiate that her absences from work were illness-related. These events did not result in tangible job consequences and therefore are not adverse employment actions actionable under Title VII. See Oest v. Illinois Dep't of Corrections, 240 F.3d 605 (7th Cir. 2001).

The judgment of the district court is AFFIRMED.

FOOTNOTE

/1 Joliet is a legendary prison. The recent an-
nouncement that it will soon close (the victim of
the budget-cutter's knife) deserves a moment of
silence. Sentimentalists, however, longing for a
good look at the old fortress, can always cue up
"The Blues Brothers" (Universal Studios, 1980)
video and see the prison's magnificent medieval
facade and Joliet Jake's long walk to freedom and
the waiting Bluesmobile attended to by his broth-
er Elwood.