# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-1564

KATHLEEN N. LOUGHMAN,

*Plaintiff-Appellant*,

v.

MALNATI ORGANIZATION, INCORPORATED,
doing business as LOU MALNATI'S PIZZERIA,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 02 C 7899—**Harry D. Leinenweber**, *Judge.*

———————

ARGUED NOVEMBER 2, 2004—DECIDED JANUARY 18, 2005

———————

Before POSNER, MANION, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Kathleen Loughman brought suit against her employer, Malnati Organization, Inc. (d/b/a Lou Malnati's Pizzeria), claiming it failed to protect her from sexual harassment by her coworkers. The district court granted Malnati's motion for summary judgment, and Loughman appeals. We start with the facts, reviewing them as we must—in the light most favorable to Loughman. *See Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1028 (7th Cir. 2004).

The Malnati corporation owns and operates a string of pizzeria restaurants in the Greater Chicago area. The events in this case occurred at the one it operates in Naperville, Illinois. Loughman began working at the restaurant, first as a "food runner" (later as a carryout cashier), in June 2000, when she was 17 years old. During her first 3 weeks on the job, kitchen workers whistled at her and made several inappropriate comments to her. Loughman reported the comments to one of the managers at the restaurant, Jim Solis, and told him that they made her feel uncomfortable. Solis told Loughman that he would talk to the kitchen workers. However, they continued to ask her personal questions such as "do you like to have sex" and "will you have sex with me."

Though the questions bothered Loughman, three physical confrontations form the basis of her complaint. The first came one night in November 2000, when Loughman was taking food to a freezer in the basement. Martin Ruellas, a kitchen employee, walked up with a similar tray of food. Loughman put her tray away and walked past Ruellas, who caught up to her, put his arm around her waist, pushed her into a room on the other side of the hall, and tried to kiss her. Loughman pushed him away and walked out, but Ruellas again caught up to her and blocked her path to the stairs for several minutes before relenting.

That night, Loughman told another Malnati's employee, Mike Heller, what happened. The next day, Loughman reported the incident to Solis, who already heard about it from Heller. Solis told Loughman that he would talk to Ruellas, which he did, warning him that he would be fired if he touched Loughman again. The threat apparently worked, and Ruellas did not bother Loughman again. Solis then reported the incident to Lori Camp, a high-ranking Malnati employee, who said she discussed the incident with all of the restaurant managers.

The second incident occurred nearly a year later when Loughman entered a walk-in cooler to get some cheese. Two

employees, Hector Hernandez and Guillermo Siffuentes, walked in behind her, turned off the light, and closed the cooler door. Hernandez grabbed Loughman, pinned her against the wall, grabbed her chest, and tried to put his hands down her pants. Loughman screamed and swung her arm, hitting Siffuentes. Siffuentes fell back into the cooler door, opening it. At that point, Hernandez backed away, and Loughman ran out of the cooler.

Safely back in the front of the restaurant, Loughman told fellow employee Julie Luba what happened. Luba reported the incident to Solis, who asked Loughman about it. Luba also discussed the confrontation with Cori Gros, another manager, who Loughman says told her: "[T]his is the kind of stuff that's going to happen and something [Loughman] should expect"; "being nice to [the Hispanic kitchen workers] is like playing with fire"; "this is in their culture"; "most Mexicans are pigs"; and that Loughman should "be a bitch to them." Gros denies making these statements, but, to repeat, we must accept that they were made at this stage of the case.

After the incident, Loughman continued working the same shifts as Hernandez and Siffuentes and says that the two continued making inappropriate comments. Loughman told Solis about the comments, but no action was taken until a year later, when Hernandez was fired.

The final physical encounter took place in August 2002. Loughman was talking to a customer on the phone when a driver for the restaurant, Tom Schaller, walked up behind her, ran his hands through her hair, slid one hand up her shirt, wiggled his fingers on her stomach, giggled and ran away. That night, Loughman reported the incident to Gros. A couple of days later, Jim D'Angelo, Malnati's district manager at the time, apologized to Loughman for the incident and began investigating the first two incidents, which he claims he had just learned about (Gros and Camp tes-

tified that D'Angelo had heard about the earlier incidents soon after they took place). That investigation led to the firing of Hernandez.

The EEOC issued Loughman a notice of right to sue in October 2002, while she was still working at the restaurant (she resigned in May 2003). She then filed suit against Malnati's, charging a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2003 *et seq.* We review *de novo* the district court's grant of summary judgment to Malnati. *See Williams*, 361 F.3d at 1028.

Generally, an employer may raise an affirmative defense to a claim under Title VII by showing that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, 118 S. Ct. 2257, 2270 (1998). In cases involving harassment by a coworker, an employer is liable only if "it negligently failed to take reasonable steps to discover or remedy the harassment." *Smith v. Sheahan*, 189 F.3d 529, 533 (7th Cir. 1999). *See also Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). This is so because employers do not entrust co-employees with significant authority with which they might harass a victim. An employer is liable for a co-employee's harassment only when it is negligent either in discovering or remedying the harassment. And when it comes to remedying a bad situation, greater vigor is necessary when the harassment is physically assaultive.

Noting that Ruellas did not bother Loughman after the first incident, that Malnati's eventually fired Hernandez, and that Schaller apologized to Loughman and was transferred to another store, the district court found that "Malnati's not only had a sexual harassment policy in place but had an effective one." We're not convinced, however, that the

policy—or Malnati's response to the incidents involving Loughman—really was that effective. Loughman was not complaining merely of inappropriate jokes or comments, though she put up with those as well, but of serious physical violations. Considering the severity of the incidents, a reasonable jury could determine that simply talking to the people involved in the first two aggressive incidents was not a sufficient response. *See Longstreet v. Ill. Dep't of Corrections*, 276 F.3d 379, 382 (7th Cir. 2002) ("An employer must take more care to protect employees, depending on the seriousness of the harassment."). The mere fact that none of the employees physically assaulted Loughman a second time does not necessarily mean that Malnati's response was adequate. See *Smith*, 189 F.3d at 535 ("Just as an employer may escape liability even if harassment recurs despite its best efforts, so it can also be liable if the harassment fortuitously stops, but a jury deems its response to have fallen below the level of due care.").

In addition, the consistent stream of harassment at the restaurant suggests that Malnati's policy was actually not very effective at all. Gros testified that she talked to the kitchen workers between 10 and 20 times about how to treat female employees, often in response to complaints from the female employees about inappropriate comments made to them. While a reasonable jury could view such diligence as evidence of Malnati's commitment to preventing harassment, it might also think the frequency of the discussions suggests that a different approach was needed. A jury could determine that, at some point, the management at Malnati's needed to stop merely issuing warnings and start taking disciplinary action against the offending employees. Gros's comments to Loughman suggesting that harassment was inevitable because it is in the "culture" of Hispanic workers do not help the restaurant's case, either. A jury could take Gros's comments to suggest that Malnati's thought any efforts to prevent harassment would be fruitless.

Testimony of two other female Malnati's employees, Frances Understein and Stephanie Boyd, also supports Loughman's contention. Both said that Ruellas sexually assaulted them, and Understein claimed that she was attacked by Siffuentes much as Loughman was. Understein reported the assaults against her to Solis, so, at a minimum, Malnati's was aware of incidents involving her (Malnati's claims it did not know of the alleged assault on Boyd). Put together with the recurring nature of the harassment against Loughman, a reasonable jury could find that Malnati's was negligent in addressing its clear sexual harassment problems. *See Longstreet*, 276 F.3d at 382 ("We have recognized that deterrence is an objective in imposing liability on employers for the creation of a hostile environment by a plaintiff's co-workers.").

Malnati's other arguments are better made to a jury. First, the restaurant claims that Loughman should have reported the incidents to more senior managers when they happened and that she did not tell the whole story about the first two incidents until almost a year after the second incident, when D'Angelo asked her about them. While it is unclear when D'Angelo learned of Loughman's allegations, it is undisputed that Solis knew about the incidents soon after each occurred. And while Malnati's sexual harassment policy allowed employees to report incidents to upper management, a reasonable jury could find that Loughman took adequate steps by reporting the incidents to Solis, one of her supervisors. Moreover, the environment at Malnati's might have weakened its policy. One employee, Hannah Bulak, said she told D'Angelo that she felt she could not complain about improper conduct at work because the managers had spoken to her and reprimanded her about flirting in the past, making her worry that she would be blamed if she reported any problems.

Malnati's also claims that no reasonable jury could find that Loughman viewed Malnati's as a hostile working en-

vironment, as required for a Title VII claim. *See Harris v. Forklift Sys., Inc.*, 114 S. Ct. 367, 370 (1993). Malnati's argues that "three isolated incidents," as it describes them, do not make for a hostile work environment and that Loughman would have complained to one of the other managers immediately after the first two incidents or would not have continued to work at the restaurant if she found the environment there to be offensive. Again, Malnati's is free to make that argument at trial. But, viewing the evidence in the light most favorable to Loughman, a reasonable jury looking at the severity of the incidents and Loughman's frequent complaints could find that Loughman believed her work environment was offensive. For these reasons, we REVERSE the district court's judgment and REMAND the case for further proceedings.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*