Teresa SCHULTZE, Plaintiff–Appellant,

v.

Thomas E. WHITE, Jr., Secretary, Defendant–Appellee.

No. 04–1990.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 10, 2004.

Decided Feb. 18, 2005.

Susan Bogart, Chicago, IL, for Plaintiff–Appellant.

Gerard A. Brost, Office of the United States Attorney, Peoria, IL, for Defendant–Appellee.

Before COFFEY, RIPPLE, and SYKES, Circuit Judges.

## ORDER

Teresa Schultze filed this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., against the United States Department of the Army (the "Army") to recover for alleged sex discrimination and retaliation. The district court granted the Army's motion for summary judgment, and Ms. Schultze has appealed. For the reasons set forth in this order, we affirm the judgment of the district court.

## I

### BACKGROUND

A. Facts

Ms. Schultze was employed at Rock Island Arsenal (the "Arsenal") from 1980 through October 4, 2000. Although she filed numerous discrimination complaints over the course of her employment, the present Title VII action stems from two administrative proceedings: (1) an August 16, 2002 final Army decision on discrimination complaints that Ms. Schultze had filed

against the Arsenal on June 25, 1997, December 8, 1997, and May 21, 1998; and (2) an April 5, 2002 decision by the United States Equal Employment Opportunity Commission ("EEOC") upholding the finding of the Merit Systems Protection Board ("MSPB") that the Arsenal had not removed Ms. Schultze from her employment in violation of Title VII.

### 1. August 16, 2002 Final Army Decision

The events that underlie Ms. Schultze's discrimination complaints adjudicated by the Army on August 16, 2002, can be summarized as follows:

#### a.

In 1997, Ms. Schultze was acting as a volunteer trainer in the Army's Honesty, Ethics, Accountability, Respect, Trust and Support ("HEARTS") program. In May of that year, she was involved in a physical confrontation with the HEARTS program manager, Greg White. This altercation arose after White refused to permit a co-worker to substitute for Ms. Schultze (the "HEARTS confrontation"). As a consequence, Hung Pham, who was directly above White in the HEARTS chain of command, indefinitely suspended Ms. Schultze from the HEARTS program. Two days later, Pham also suspended White; this suspension was later rescinded, however, when White prevailed in an arbitration proceeding. On June 25, 1997, Ms. Schultze filed a discrimination complaint related to these events. She accused White of sexual harassment and Pham of sex discrimination.

#### b.

The following October, Thomas Showalter, the director of operations for Ms. Schultze's department, suspended Ms. Schultze from her job duties for five days because of her role in the HEARTS confrontation. On December 8, 1997, Ms. Schultze filed a discrimination complaint; she alleged that Showalter had suspended her because of her sex.

#### c.

Ms. Schultze subsequently was not accepted as a HEARTS trainer for the 1998 season. On May 27, 1998, she filed a discrimination complaint in which she alleged that she was not selected in reprisal for her prior complaints against White and Pham.

The Department of Defense Office of Complaint Investigations conducted an investigation of the incidents described in the June 25, 1997, the December 8, 1997 and the May 27, 1998 complaints (collectively the "HEARTS incidents"). On the basis of that investigation, the Army determined that Ms. Schultze had suffered neither sex discrimination nor retaliation.

### 2. April 5, 2002 EEOC Decision

Ms. Schultze was terminated from her employment at the Arsenal on October 4, 2000. The events leading up to her termination can be summarized as follows: In September 1999, Ms. Schultze received an authorization to travel to Washington, D.C. for a seminar scheduled for early December. Ms. Schultze pointed out to Showalter's secretary that a rental car had not been authorized; the secretary typed in "rental car authorized." Showalter signed the travel form, but he was unaware that the authorization form had been altered to include permission to rent a car.

The form was then received by Charlotte Langston, a traffic management specialist. Langston determined that there was no justification for the rental car and therefore deleted the authorization. According to Langston, Ms. Schultze was present when Langston told an agent at

the Arsenal's travel office that Ms. Schultze was not authorized a rental car. Shortly thereafter, however, Ms. Schultze returned to the travel office and reserved a rental car at the government rate.

Upon return from the Washington seminar, Ms. Schultze submitted a voucher for reimbursement of her expenses directly to the Defense Finance and Accounting Service ("DFAS"). Among those expenses was an automobile rental. DFAS returned the voucher, without payment, to Showalter. Showalter referred the voucher for investigation to an Arsenal criminal investigator, Donald Shanley.

Shanley determined that Ms. Schultze had attempted to obtain reimbursement for rental car expenses that had not been authorized. During his investigation, Shanley also discovered that Ms. Schultze had used her government computer to prepare a bid for services related to a business she owned, had made excessive visits

to web sites unrelated to her job duties and had made numerous personal calls.

Showalter concluded that the charges were supported by the evidence and that the charges justified Ms. Schultze's termination, effective October 4, 2000. Ms. Schultze appealed her termination to the MSPB. The MSPB ruled that the Army had cause and that the termination was not retaliatory. On April 5, 2002, the EEOC upheld the MSPB's decision.[1]

### B. District Court Proceedings

Ms. Schultze's complaint alleged that, during the 1990s, when Showalter was in the chain of command over her, she suffered gender discrimination, a hostile work environment and retaliation.[2] The Army moved for summary judgment; it submitted that Ms. Schultze had failed to exhaust her administrative remedies with respect to any allegations of sex discrimination other than the HEARTS incidents. With respect to the merits of Ms. Schultze's

---

1. Ms. Schultze challenged numerous other incidents of alleged discrimination through the Army's internal EEO complaint process. On August 16, 1991, she complained that she was subjected to a hostile work environment based on her sex because her supervisor, Philip Lemke, who reported to Showalter, had been monitoring her trips to the restroom and other comings and goings and had called her a "bitch." R.34, Ex.29. The Army investigated the complaint and found no hostile work environment. R.34, Ex.29 at S26303. On November 10, 1997, Ms. Schultze complained when she was not chosen for an off-site job and had heard that one of her supervisors had said that she would never go anywhere again. R.34, Ex.16 at Ex.D. On January 6, 1998, she complained that the Arsenal failed to provide adequate restroom and shower facilities for women. R.34, Ex.16 at Ex.C. Ms. Schultze did not file a formal complaint regarding either incident. R.38a at 3 n. 1. In May 1998, Ms. Schultze filed a complaint alleging that she was given a ten-day suspension, for insubordination and restricting access to a public restroom, in reprisal for her refusal to withdraw other pending complaints. The EEOC

determined that Ms. Schultze was retaliated against when given the suspension. R.34, Ex.26 at 148.

2. The complaint stated:

Throughout her employment when Thomas J. Showalter was above her in her direct chain of command, Plaintiff was subjected to terms and conditions of employment different from her similarly situated non female employees and was intentionally discriminated against and harassed based upon her gender, female, including but not limited to being repeatedly subjected to a hostile work environment based upon sex in which Plaintiff was subjected to heightened scrutiny when using the restroom facilities, denied equal shower and restroom facilities, subjected to differing terms of employment and advancement opportunities, physically assaulted, and in or about October 4, 2000 was terminated by Thomas J. Showalter, all without the Defendant taking remedial action.

R.8, ¶ 11.

contention, the Army maintained that Ms. Schultze had failed to make a prima facie case of discrimination or retaliation.

The district court concluded that "Schultze, in her response brief, comes closest to putting an argument together with respect to the termination. She fails to develop a response to the rest of the Army's contentions and the Court deems her to have conceded those points." R.46 at 4. The district court then concluded that Ms. Schultze could not prevail on her termination claim because she had produced no evidence that Showalter had treated her worse than any similarly situated employee who had not engaged in Title VII activity, or that Showalter did not honestly believe that her termination was warranted. Accordingly, the district court granted summary judgment in favor of the Army.

## II

## DISCUSSION

### A. Standard of Review

We review de novo the district court's order granting summary judgment. We construe all facts and inferences in the light most favorable to Ms. Schultze, the nonmoving party. *Little v. Illinois Dep't of Revenue,* 369 F.3d 1007, 1011 (7th Cir. 2004). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Hostile Work Environment

A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment. *Cowan v. Prudential Ins. Co. of America,* 141 F.3d 751, 755 (7th Cir.1998) (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

■ The Army submits that the district court properly did not consider Ms. Schultze's allegation that she was subjected to a hostile work environment. In this respect, the Army offers three theories to support its argument: (1) Ms. Schultze did not raise a hostile work environment issue in the complaints that were adjudicated in the August 16, 2002 final Army decision; (2) although Ms. Schultze raised a hostile work environment issue before the MSPB, she later abandoned the issue; and (3) she failed to address the Army's exhaustion defense in the district court, and thus has waived any rebuttal on appeal. Upon examination of the record, we believe that considerations of judicial economy counsel against our resting our decision on this ground. Because we believe that the record clearly supports affirmance of the district court's judgment, we shall proceed directly to that issue.

After our examination of the record, we conclude that Ms. Schultze has not put forward sufficient evidence of a hostile work environment to withstand summary judgment. "[F]or sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive work environment." *Id.* To qualify as hostile, "the work environment must be both objectively and subjectively offensive." *Rhodes v. Illinois Dep't. of Transp.,* 359 F.3d 498, 505 (7th Cir.2004). To evaluate whether a work environment is objectively hostile, we consider all of the circumstances, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or hu-

miliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1453 (7th Cir.1994) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

In support of her hostile work environment claim, Ms. Schultze notes the HEARTS confrontation. Reading the record most favorably to Ms. Schultze, the nonmoving party, it appears, *on this record*, that White did physically assault Ms. Schultze. We have said previously that "one extremely serious act of harassment could rise to an actionable level." *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir.2001). However, White's physical assault does not evidence a Title VII violation; the record simply does not reflect that he took his actions because of Ms. Schultze's gender. *But cf. Smith v. Sheahan*, 189 F.3d 529, 533 (7th Cir.1999) (female prison guard who was assaulted by male coworker presented sufficient evidence to raise the necessary inference under Title VII that the assault was based on her sex, and not randomly violent, by presenting affidavits of other guards documenting his recurrent hostile behavior toward female coworkers).

Ms. Schultze also supports her claim by citing to repeated incidents when she purportedly was treated less favorably than similarly situated employees. A plaintiff may establish a Title VII violation if the sexual harassment denied her " 'the right to participate in the work place on equal footing with others similarly situated.' " *King v. Bd. Regents Univ. of Wis. Sys.*, 898 F.2d 533, 537 (7th Cir.1990) (quoting *Scott v. Sears, Roebuck & Co.*, 798 F.2d 210 (7th Cir.1986)). Ms. Schultze's submission falls short of this standard.

Ms. Schultze points out that White was not suspended from work for assaulting her, but she was suspended for five days for her role in the confrontation. Ms. Schultze ignores, however, the fact that she and White had different work supervisors.

Ms. Schultze also alleges that employees who had accessed pornographic websites were not terminated, but she presents no evidence of those employees' gender or whether they also had filed discrimination complaints. Contrary to Ms. Schultze's assertion, Ron Thackery's testimony does not support her claim; rather, he testified that he had heard of incidents where employees were disciplined for visiting unauthorized websites. R.34, Ex.3 at 52.

She also claims that no other employee for whom the Arsenal had "substantial evidence" of personal use of the telephone was disciplined or terminated. Appellant's Br. at 20. The only evidence presented by Ms. Schultze, however, is the testimony of an Arsenal employee who had made personal calls only for emergency purposes and who further stated that she did not know the extent to which other employees made personal calls. R.34, Ex.7 at 27.

Ms. Schultze further claims that no other employee who had submitted a travel voucher for an expense that might be rejected was criminally investigated or terminated. This assertion is contradicted by Arsenal investigator Shanley's testimony that he had investigated five or six other false travel voucher allegations. R.34, Ex.5 at 62–63.

Finally, Ms. Schultze submits as evidence of a hostile work environment the incidents about which she filed an internal complaint in 1991. Those incidents include that Philip Lemke, who was under Showalter in the chain of command, monitored and timed Ms. Schultze's trips to the restroom, once called her a "bitch" and "otherwise subjected [her] to heightened scruti-

ny." Appellant's Br. at 20. The Army investigated the 1991 complaint and found no hostile work environment, and Ms. Schultze did not appeal that decision. Although the 1991 incidents are beyond Title VII for purposes of the present action, we see no reason to prevent Ms. Schultze from using the incidents as anecdotal evidence of a hostile work atmosphere. Even so, Ms. Schultze still has not presented sufficient evidence to raise an inference of an abusive or hostile work environment. The record does not reflect whether Lemke's monitoring of Ms. Schultze's activity was frequent, whether it was humiliating or merely offensive nor whether it unreasonably interfered with Ms. Schultze's work performance. Furthermore, no evidence reflects that Ms. Schultze suffered similar or other hostility after 1991, and before 1997, when she next filed a complaint of discrimination, which was related to the HEARTS program. Such a gap in time undermines the support that the 1991 incidents lend to an inference that Ms. Schultze's work environment was one that a reasonable person would consider hostile.

In sum, the totality of the circumstances that Ms. Schultze has presented does not raise an inference of a workplace so "permeated with discriminatory intimidation, ridicule, and insult" or harassment sufficiently severe or pervasive to have altered the conditions of her employment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Consequently, Ms. Schultze has not created a genuine issue of material fact as to whether her workplace objectively was hostile, and summary judgment is proper.

C. Sex Discrimination Based on Disparate Treatment

Section 703(a)(1) of Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may prove intentional employment discrimination through direct or circumstantial evidence. "[D]irect evidence 'essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.'" *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir.2003). Circumstantial evidence includes "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group"; comparative evidence that employees similarly situated to the plaintiff outside of the protected class systematically are treated better; and pretext. *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994).

The indirect burden-shifting method described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), offers an alternative route. To establish a prima facie case under this method, the plaintiff must show that: (1) she was a member of a protected class; (2) she was meeting her employer's legitimate business expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably. *Rhodes*, 359 F.3d at 504. If the plaintiff carries that burden, the employer must bring forth a legitimate, nondiscriminatory reason for the employment action. *Id.* If the employer does so, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason is a pretext for discrimination. *Id.*

The district court approached this case under the direct method and held that Ms.

Schultze's purported comparative evidence and evidence of pretext failed to prove discrimination. On appeal, Ms. Schultze summarily asserts that the district court selected only portions of the evidence she proffered, improperly resolved inferences in favor of the Army and ignored the indirect method of proof. Appellant's Br. at 23. Ms. Schultze states that the district court should have considered, as prima facie evidence of discrimination, whether similarly situated employees had been disciplined by the same decision-maker who had imposed her termination. *Id.* at 23–24. Ms. Schultze identifies no such similarly situated employee; in addition, she submits to us no direct or circumstantial evidence that the HEARTS incidents were acts of discrimination based on her gender. Her undeveloped arguments fall far short of Ms. Schultze's burden to prove discrimination under either the direct or the indirect method. Thus, we must conclude that the district court properly dismissed Ms. Schultze's sex discrimination claim.

### D. Retaliation

■ The district court also granted summary judgment on Ms. Schultze's retaliation claim. Section 704(a) of Title VII makes it unlawful "for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). The plaintiff may establish a prima facie case of retaliation and avoid summary judgment using either the direct method or the indirect method. *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir.2003). Ms. Schultze has not indicated under which method she is pursuing her retaliation claim. Regardless, she has not presented sufficient evi-

dence to proceed to trial under either method.

Under the direct method, the plaintiff must present direct evidence of (1) a statutorily protected activity, (2) an adverse employment action and (3) a causal connection between the two. *Id.* Ms. Schultze's claim falters on the third element. The district court found "quite speculative" the notion that Showalter remained in a retaliatory frame of mind when he terminated Ms. Schultze's employment in 2000, two years after Ms. Schultze's last discrimination complaint. R.46 at 15. Ms. Schultze submits that the district court ignored the fact that her 1997 and 1998 complaints about the HEARTS incidents were pending when she was terminated. Appellant's Br. at 25. The Army asserts that Ms. Schultze did not raise, and thus has waived, any argument that the proximity between her 1997 and 1998 complaints and her termination in 2000 is evidence of a causal connection. We need not base our decision on this issue, however, because Ms. Schultze's retaliation claim squarely fails even considering the fact that her 1997 and 1998 complaints were pending at the time of her termination. "[M]ere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir.2002) (collecting cases). Moreover, at least two years passed between the time Ms. Schultze filed her 1997 and 1998 complaints and her termination. At least on this record, a two-year gap cannot establish a causal link between the two events. *See, e.g., Haywood v. Lucent,* 323 F.3d 524, 532 (7th Cir.2003) (one year between the time plaintiff informed employer of her internal discrimination complaint

and her termination did not support inference of causation) (citing *Filipovic v. K & R Express Sys., Inc.,* 176 F.3d 390 (7th Cir.1999) (four months negates causal inference) and *Davidson v. Midelfort Clinic,* 133 F.3d 499 (7th Cir.1998) (no causal inference where employee was terminated five months after filing EEOC complaint)).

Ms. Schultze further attempts to establish her prima facie case by evidence of pretext. She submits that she "demonstrated at the MSPB hearing that the Arsenal did not have evidence to support her misuse of the telephones or computers and did not establish that she engaged in travel fraud." Appellant's Br. at 28. However, she does not identify what proof she is referring to; the MSPB concluded on the record before it that Ms. Schultze was not terminated for retaliatory purposes. Ms. Schultze summarily asserts that she "has demonstrated that others who engaged in similar and more egregious conduct but did not file EEO complaints were not disciplined or terminated." *Id.* Yet, she points to no comparative employee. Ms. Schultze further asserts that Showalter did not make a reasonably informed decision before he terminated her, and, thus, his decisional process is "unworthy of credence." *Id.* at 27. Our court has rejected such arguments. *See Kariotis v. Navistar Int'l Trans. Corp.,* 131 F.3d 672, 677 (7th Cir. 1997) (arguing about the accuracy of the employer's assessment is a distraction because the question is whether the employer's description of its reasons is honest).

Ms. Schultze also fails to bring forth sufficient evidence to raise a triable issue of retaliation under the indirect method. The plaintiff seeking to prove retaliation under this method, must show: (1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) her job performance was satisfactory; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Sitar,* 344 F.3d at 728. If the plaintiff makes that showing, the burden shifts to the defendant to articulate a legitimate, non-invidious reason for its adverse action. *Id.* Once the defendant presents such a reason, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual. *Id.*

Ms. Schultze cannot prevail under this method because she has failed to establish the fourth prong of the prima facie case. As we have noted earlier in this opinion, she identifies no specific employee similarly situated to her who was treated more favorably than her. On that ground alone, summary judgment is proper. Even if Ms. Schultze was able to make the prima facie case, as we have explained with respect to her direct case, the evidence of pretext she has produced does not raise a genuine issue of material fact as to whether Showalter's explanation for her termination—misuse of government equipment and submission of a false travel voucher—was the actual reason for her termination.

For all of these reasons, Ms. Schultze has not presented sufficient evidence of retaliation to allow a reasonable jury to return a verdict in her favor.

### Conclusion

Accordingly, we affirm the judgment of the district court.

AFFIRMED